SULLIVAN v. LATIMER.

1. SUBSTITUTION OF TRUSTEE—PARTIES.—Upon the death of a trustee, the Court of Common Pleas may appoint his successor on the *ex parte* application of the *cestui que trust.*

2. IBID.—IBID.—PURCHASER OF TRUST PROPERTY.—To such a proceeding the parties in possession of the land, the subject of the trust, claiming it as their own under devise from B, who had purchased it as the property of the deceased trustee, are not necessary parties, as the sale of the trust property without notice to the equitable owners vested no title in B, even if the deceased trustee had undertaken to devise it as his absolute estate.

3. TRUSTS—ADVERSE HOLDING.—Where one purchases a tract of land sold as the absolute estate of A, knowing at the time that A held it only as trustee for his sister and her children, the purchaser takes the land subject to the trust, and becomes himself a trustee, and cannot, while retaining possession, acquire title by prescription, or hold it under the statute of limitations without clear proof of adverse possession. The mere retention of possession of land, subject to a trust, is not adverse to the *cestuis que trust,* nor are they debarred by *laches*

from asserting their rights because of their non-action for the space of 20 years.

Before Wallace, J., Laurens, September, 1890.

Action by William D. Sullivan, as trustee of Martha C. Kay, against John P. Latimer and others, for the recovery of a tract of land. At the close of plaintiff's testimony, defendant moved for a non-suit on the ground that there was no proof of legal title in plaintiff, as the persons holding the legal title were not parties to the proceeding under which the plaintiff was appointed trustee. This motion was refused.

The judge charged the jury, that "the real issue in the case is whether or not the title of the defendant is protected by what we call prescription, *i. e.*, twenty years adverse possession." Then, after defining and explaining what title by prescription was, he continued as follows:

The plaintiffs come in and say : These people have held the land for twenty years, but they have got no right to set up that they have held adversely, and therefore hold it by prescription, because it was trust property, and when they bought it they knew it was trust property. Right there, you see, is the very gist of the question you have to decide. A trustee cannot hold his property—any property or land—against the *cestui que trust, i. e.*, the person for whose use he holds it. He cannot hold against him, because he holds it for him. Being a trustee, he holds it for the person for whose interest and benefit he holds it; and holding it *for* him, you see he cannot hold it *against* him. And therefore this thing of adverse possession cannot be set up by a trustee against a person for whom he holds it. * * * The trustee cannot hold against a person, for whose use he holds the property, for the reason that I have stated. He holds it for her, and that relation between them stands always. No statute of limitation comes in there, no prescription comes in there, unless, as I said, he goes and renounces to her the relation between them.

The plaintiff here says, that when Mr. Hewlet Sullivan bought this property here at judicial sale, he knew that it was trust property, and that Arnold Sullivan held it for his sister under the will of his father.

The law says that if a man has express notice that certain property is held in trust, and he goes and buys it, he takes it subject to that trust, because he has undertaken to aid in the breach of a trust, in the destruction of a trust, in the betrayal of the rights of the person for whose benefit the property was held, and the law says: "You shall not do that. You shall be trustee. You shall hold that property until the person for whose benefit it was intended takes hold of it and manages it in the way that was intended by the original donor." You see, if Hewlet Sullivan knew when he bought that land that it was her land, or if he knew any fact that would suggest to him that he had better inquire whether or not that was trust land, and he bought it under these circumstances, why, then, he became trustee, the incidents of the trust were attached to the land in his hand, and he would hold it for the plaintiff here, his sister, Mrs. Kay. He would hold it for her, and therefore holding it for her, he could not hold it against her; and therefore he could not hold it against her adversely, and neither the statute of limitations nor the rule of prescription would run in his favor as long as that state of things lasted. That really is the point in the case.

So, now, the case is right there: If Mr. Sullivan had notice at the time of this purchase, or if there were any facts within his knowledge that would require a prudent man to inquire whether or not that land was subject to a trust, the statute would not commence to run. But if he did not have notice, or have anything that would suggest to him that he had better inquire, and he bought it, why, from that time the statute would run in his favor; and if the twenty years had run out during his holding or the holding of persons to whom he conveyed, the defendants here would have a good title, would have a title by prescription, which is, in effect, a title by grant. But if he had notice that that property was trust property, or if he had a knowledge of facts that would suggest to him that he had better inquire whether that was trust property or not, and he did not do it, why, then, the statute would not run in his favor, because, upon the assumption that he knew it was trust property, the law would put it into his hands with the condition of the trust imposed upon it, and he would hold it for the benefit of the *cestuis que trust,* the persons who are

beneficially interested in it, and the statute never could run in his favor, and the title would stand good to day. That is the issue. That is the point in the case, and you have to settle it as a matter of fact.

I am requested to charge: "1st. That if the jury believe from the evidence that the tract of land in dispute was devised by Joseph Sullivan to M. A. Sullivan, in trust for his daughter, who is now Malinda C. Kay, and that said land was bought by Hewlet Sullivan when sold as the property of M. A. Sullivan, with a full knowledge of the fact, and that the defendants derive their title through Hewlet Sullivan, then the plaintiff is entitled to recover." I charge you that.

The jury returned a verdict for the plaintiff for the land in dispute, and $200 damages.

The defendants moved upon the minutes of the court for a new trial, on the ground that the verdict was contrary to the law and evidence, which motion was refused.

The defendants appealed on the following exceptions:

1. It is submitted that his honor erred in refusing the motion for a non suit, inasmuch as the plaintiff's evidence showed that the legal title to the land was in the defendants at the time the order appointing plaintiff trustee was passed; and inasmuch as such order did not divest their title, the defendants not being parties to said proceeding.

2. He erred in refusing the motion for a new trial, inasmuch as there was no testimony to show legal title in the plaintiff, his own testimony showing the title to be in the defendants.

3. He erred in charging the jury, that "the real issue in the case is whether or not the title of the defendant is protected by what we call prescription, *i. e.*, twenty years' adverse possession." It being submitted that this charge excluded the consideration of the defence of adverse possession for ten years by Hewlet Sullivan, the devisor of defendants.

4. He erred in charging the jury, that "if Hewlet Sullivan knew, when he bought that land, that it was her land, or if he knew any facts that would suggest to him that he had better inquire whether or not that was trust land, and he bought it under

these circumstances, why, then, he became trustee, * * * and he would hold it for Mrs. Kay, * * and could not hold it adversely to her, * * and neither the statute of limitations nor this matter of prescription would run in his favor as long as that state of things lasted."

5. He erred in charging, that "if he had notice that that property was trust property, or if he had a knowledge of facts that would suggest to him that he had better inquire whether that was trust property or not, and he did not do it, * * then the law would put it in his hands with the condition of the trust imposed upon it, and he would hold it for the benefit of the *cestui que trust*, and the statute never could run in his favor, and the title would stand good to day. * * That is the point in this case, and you have to settle it as a matter of fact."

6. He erred in charging plaintiff's request [stating it].

7. Because his said charge excluded from the jury the consideration of the question, whether the purchase by Hewlet Sullivan was not, under the circumstances, a throwing off of the trust, and whether his holding thereafter was not adverse to *cestuis que trust*, and whether the said Malinda C. Kay had notice thereof.

*Messrs. R. C. Watts, Westmoreland & Haynsworth*, and *W. H. Irvine*, for appellants.

*Messrs. Ferguson & Featherstone*, contra.

March 11, 1892. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action to recover a tract of land (350 acres), described in the complaint, as trustee of Malinda C. Sullivan, now Kay. As well as we can understand, the leading facts are as follows: Joseph Sullivan departed this life in *1840*, leaving a will, by which he devised the parcel of land in dispute as follows: "I hereby convey and deed to George W. Sullivan, to be held by him in trust, until my son, M. A. Sullivan, arrives of age, then the title to vest in him, the following property: One tract of land, * * * for the use and benefit of my daughter, Malinda C. Sullivan, the said land to be held in trust in the same manner that my daughter, Mary Ann Epps, is,

by deed, &c."—(that is to say, "to her sole and separate use during her life; and further, in trust, upon her death, to sell the said land, and distribute the proceeds equally among her surviving children, &c." See the Epps' deed in record.)

Milton A. Sullivan, as soon as he arrived at full age, took possession of the land and held it as trustee, paying the rents to his sister, Malinda C., then an infant, up to the time of his death in February, 1865. He also left a will, which is not before us, but it was stated at the bar that it gave all his property, real and personal, without describing it, to his brothers, W. D. Sullivan and C. P. Sullivan, but requiring them to pay $50 per annum to another brother, J. Hewlet Sullivan. C. P. Sullivan qualified as executor of this will, and in 1866 filed a bill against W. D. Sullivan, J. Hewlet Sullivan, and one Bolt (supposed to be a creditor of the testator, M. A. Sullivan), alleging an insufficiency of personal assets to pay the debts, and including in the proceeding the trust land in controversy as part of the absolute property of the testator, M. A. Sullivan. It was sold and bid off by Hewlet Sullivan, who took commissioner's titles for the same, and gave bond and mortgage to secure the purchase money, which was not fully paid until 1879. In May, 1887, Hewlet Sullivan died, leaving a will, under the general residuary clause of which the defendants claim that the land in controversy was devised to them.

In 1887, Malinda C. Kay filed her petition in the Court of Common Pleas, setting forth the death of M. A. Sullivan, her testamentary trustee, and praying for the appointment of some suitable person to act as her trustee in place of her late brother, M. A. Sullivan, deceased. After proper inquiry, the court made an order appointing the plaintiff trustee, and the certificate required by the statute was attached to the original will of Joseph Sullivan. The plaintiff, as such trustee, now brings this action to recover possession of the said tract of land. (Action brought November 12, 1887.) The defendants answered, *first*, denying each and every allegation of the complaint; *second*, alleging that Hewlet Sullivan, under whom they claim, was in the exclusive adverse possession of the land, claiming it as his own, for ten consecutive years prior to the commencement of this action under a deed from the commissioner in equity; and, *third*, alleging that

the defendants and those under whom they claim have been in the exclusive adverse possession of the land, claiming it as their own for more than twenty years prior to the commencement of this action.

At the close of plaintiff's testimony, the defendants moved for a non-suit on the ground that the testimony failed to show legal title in the plaintiff, claiming that the appointment of the trustee was irregular and void, for the reason that the defendants, who had the legal title, had not been made parties. The motion was refused. Under the charge of the judge, the jury found a verdict for the plaintiff, "the land in dispute and two hundred dollars damages." The defendants appeal to this court upon numerous exceptions, which are long, and being all presented in the "Brief," need not be set out here.

Exceptions 1 and 2, in relation to the motion for non-suit, make the point, that the plaintiff had not the legal title to the land, and could not as trustee maintain the action. The defendants say, *first*, that the proceedings by which he was appointed trustee were without authority, irregular, and void. We know no reason why, in case of the death of a trustee, the Court of Common Pleas, in the exercise of its equity jurisdiction, may not appoint another trustee in his place, with all the powers and duties given to the first, at the instance of the *cestui que trust*, and that by *ex parte proceeding*. It has always been one of the cherished purposes of the Court of Equity to guard the rights of infants and married women; and to that end one of its maxims is that a trust will not fail for the want of a trustee. Judge Norton, after proper inquiry, made the appointment, and the exercise of his discretion will not be disturbed. Having jurisdiction of the subject-matter, he pronounced a judgment which must stand until regularly set aside. See *Ex parte Knust*, Bail. Eq., 489; *Ex parte Mayrant*, Rich. Eq. Cas., 1; and *McNish v. Guerard*, 4 Strob. Eq., 66.

But under this head, it is further urged, that it was necessary that the defendants should have been made parties, for the reason that the legal title to the land was in them through Hewlet Sullivan, who purchased it at the commissioner's sale under judicial proceedings. M. A. Sullivan had the legal

title as trustee for "the sole and separate use of his sister Malinda for life, and then to sell it and divide the proceeds equally among her children," &c.   When he died, where did the legal title go? We incline to think that M. A. Sullivan, giving by his will all his property, real and personal, to his brothers, W. D. and C. P. Sullivan, did not intend to devise the *trust tract* as *his own absolute property.*   It is not to be presumed that in the last most solemn act of his life, he meant to perpetrate a deliberate fraud upon his sister, by appropriating her land which he held as trustee.   If not, the legal title must have descended to his heirs, whoever they may be.   But if we must assume that he did so intend, that he undertook to devise the land absolutely to his brother, who must have had full knowledge of the trust in the will of their father, Joseph Sullivan, such attempted devise was manifestly a flagrant disregard of the rights of the *cestuis que trust;* and the subsequent proceeding to sell the land as the absolute property of M. A. Sullivan, without any notice whatever to the equitable owners, *was absolutely void*, carrying no title to Hewlet Sullivan, the purchaser, or those who claim through him.

All the other exceptions, in different forms, allege error in the charge of the judge as to the effect of the long possession of Hewlet Sullivan, both as to the statute of limitations and the doctrine of prescription, and, as we think, may be considered under the fourth exception, which reads as follows: "That his honor erred in charging the jury, that if Hewlet Sullivan knew, when he bought the land, that it was her land, or if he knew any facts that would suggest to him that he had better inquire whether or not that was trust land, and he bought it under these circumstances, why, then, he became trustee, * * * and he would hold it for Mrs. Kay, * * * and could not hold it adversely to her, * * * and neither the statute of limitations nor this matter of prescription would run in his favor as long as that state of things lasted."

The jury in effect found that Hewlet Sullivan purchased the land of his kinslady with full knowledge of the trust, which, doubtless, was right, for Spencer Wood testified at the trial that he was present at the sale by the commissioner, bidding for the land, when Hewlet Sullivan approached him and asked him if he

knew the "land was entailed property," whereupon he ceased to bid. It is very clear, then, that Hewlet Sullivan became trustee by his purchase, and took the land *cum onere.* When a person buys property that is subject to a trust, he takes it subject to the trust. *Smith* v. *Daniel*, 2 McCord Ch., 143. "The relations and privity between trustee and *cestui que trust* are such that the possession of one is the possession of the other, and there can be no adverse claim or possession during the continuance of the relation. It is the duty of the trustee, if he intends to claim the estate, to resign his trust and deliver over the possession which he received as trustee. He will then be in a position to maintain his claim, for no claim should be made through a breach of trust. And no trustee, while occupying a place of trust and confidence, should be allowed to set up an adverse title," &c. Perry on Trusts, section 864.

But it is further argued, that this doctrine only applies to *direct trusts;* that *in constructive trusts*, where the conduct of a party fixes upon him a trust, he may plead lapse of time in analogy to the statute of limitations and prescriptions. There is such a doctrine, but, as far as I have been able to discover, it will not be allowed to a trustee who still retains possession of the property and is unable to make clear proof of adverse possession. The Chief Justice of the Supreme Court, in discussing the famous case of *Cholmondeley* v. *Clinton*, expressed the doctrine as follows: "The case was considered of the highest importance, and the opinion expressed, that both on principle and authority, the *laches* and non-claim of the rightful owner of an equitable estate for a period of twenty years (supposing it the case of one who must, within that period, have made his claim in a court of law had it been a legal estate), under no disability and where there has been no fraud, will constitute a bar to equitable relief, in analogy to the statute of limitations, if, during all that period, the possession has been held under a claim unequivocally adverse." See 10 Wheat., 174.

It would seem somewhat difficult to understand how one made a trustee for the express purpose of holding the property for the *cestui que trust*, could at the same time be regarded as holding adversely to that very same person, without any notice at any

time that he disclaimed the trust imposed upon him and claimed the land as his own. Possibly to avoid that seeming contradiction, the Court of Equity, in giving relief in such cases, proceeds rather upon the *laches* of the equitable owner. *Gregory* v. *Rhoden*, 24 S. C., 99. We cannot say that in this case there was no "disability" or "fraud," or that there was proof of a claim "unequivocably adverse." Adverse to whom? To the remaindermen under the trust, possibly infants? To Mrs. Kay, whose first trustee was dead, who was not made a party to the proceedings under which Hewlet Sullivan purchased, and who, as far as appears, may not have even known that Hewlet Sullivan purchased the land and held it as his own? "The mere purchasing and taking possession of the land covered by the lien of a mortgage, does not constitute adverse possession, which would give currency to the statute of limitations." *Clark* v. *Smith*, 13 S. C., 585. We agree with the Circuit Judge, that there is no proof sufficient to charge the equitable owners of the land with such *laches* as should forfeit their right of recovery.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.