## 9329

### WALKER v. TAYLOR ET AL.

(88 S. E. 300.)

1. TRUSTS—RESULTING TRUST.—Where, without any administration, the
widow takes the money of deceased and invests it in land, taking
title in her name, there is a resulting trust in favor of the child to
the extent of its interest in the money.

2. VENDOR AND PURCHASER — BONA FIDE PURCHASER — NOTICE. — Pur-
chasers of land with knowledge that another, then at hand, claims
some interest therein, are charged with all knowledge they could
then have had for the asking.

3. APPEAL AND ERROR—REVIEW—MATTERS UNNECESSARY TO DECISION.—
Where plaintiff is entitled to all she asks, a third interest in land,
whether or not arbitration proceedings were valid, the question of
its validity is immaterial.

4. ADVERSE POSSESSION—PURCHASER FROM TRUSTEE.—Limitations will not
run, so as to give title by adverse possession, in favor of purchasers

who know that the vendor held title to a certain interest in trust, and on that account reserve part of the purchase price.

Before MOORE, J., Greenwood, April, 1915.   Affirmed.

Action by Mrs. Annie B. Walker against George H. Taylor and others. Judgment for plaintiff, and defendants appeal. Affirmed.

The decree of the trial Court is as follows:

The facts upon which this action is brought are clearly established by the testimony to be as follows:

The plaintiff is a daughter of Joseph Benson, who died many years ago and left as his heirs at law and distributees his widow, Mrs. Harriet Benson, and the plaintiff. At the time of his death, James Benson was possessed of some personal estate, the amount of which is not shown. His widow, Mrs. Benson, without administration took charge of this personal property and invested it in a house and lot in New Market, and afterwards sold the house and lot and reinvested the proceeds in the 66 acres of land, which is the subject of this action. When this second investment was made, Mrs. Benson had married a Mr. Wilkinson, and she is, therefore, spoken of in the record as Mrs. Harriet Wilkinson. At the time of her father's death, the plaintiff, Mrs. Walker, was a very small child. On reaching her majority, the plaintiff raised some question with her mother, Mrs. Wilkinson, about the appropriation of her father's estate, and the difference between them was on the 5th day of March, 1899, referred to a board of arbitrators. The agreement to arbitrate was in the form of a bond executed by Mrs Wilkinson to abide by the decision of the board. The arbitrators rendered the following decision in writing:

FOOTNOTE.—As to creation of resulting trusts, see 2 L. R. A. 146; 6 L. R. A. (N. S.) 381; 26 L. R. A. (N. S.) 161; 5 A. & E. Ann. Cas. 255; 12 A. & E. Ann. Cas. 805; 2 A. & E. Ann. Cas. 677.

"That at the death of the said Mrs. Harriet Wilkinson one-third of the 60 acres of land now in possession of Mrs. Wilkinson and said to have been purchased in part with funds belonging to the estate of Joseph Benson, be given to Mrs. Annie Walker as her interest in the said estate of Joseph F. Benson." The bond and decision of the arbitrators were filed for record with the clerk of the Court for Abbeville county, where the land was then situate, on the 11th day of March, 1899, and was recorded in mortgage Book F, at page 129. The lands referred to in the decision of the arbitrators are the lands which are the subject of action. Thus far the facts are not in dispute.

On the 12th day of March, 1900, Mrs. Wilkinson conveyed the lands to the defendant, George H. Taylor. Testimony shows that Mrs. Walker, with her husband, came to Greenwood and negotiations were had between her husband, Mrs. Wilkinson, and Mr. Taylor about the settlement of her claim in the land. Mr. Taylor admits that on this occasion there was some dispute between Mrs. Wilkinson and Mrs. Walker about a division of the money which Mrs. Wilkinson was to get from the sale of the land, for he says: "Q. Don't you know they were talking about the claim of Mrs. Walker? A. If they were talking about it, I do not know. I understood there was some trouble about getting the money. Q. You understood there was some trouble between Mrs. Wilkinson and Mrs. Walker about dividing the money you were to pay for this land? A. There was some contest about the paper. Q. You know they were about here two or three hours and do you mean to testify that you did not know the nature of that claim? A. I do. Q. You did know it was a claim? A. I knew it was some contest between Mrs. Wilkinson and Mrs. Walker." Again, speaking of the same transaction, he says: "Q. That was in the morning? A. No, it was not. It was 10 o'clock when we met there. They were first in one place and then in another. I went to Mrs. Wilkinson a time or two, and

# 4 WALKER *v.* TAYLOR.

she said that she and Mrs. Walker could not come to an agreement. Q. That was before you signed the deed? A. Yes. Q. With that information you did not take the trouble to find out what the claim was? A. That was nothing to me."

The testimony of plaintiff is full and clear to the point that Mrs. Walker came to Greenwood for the purpose of having her interest in the lands fixed and paid over to her, that no agreement could be reached, that Mr. Taylor knew of plaintiff's claim, and that he actually withheld part of the purchase price to protect himself against the same. This is not only evident from the plaintiff's testimony, but is borne out by the fact that Mr. Taylor actually took possession of the original arbitration agreement which was turned over on this occasion as one of his muniments of title by Mrs. Wilkinson; and by the testimony of his codefendant, who at first denies all knowledge of the claim of Mrs. Walker, but on cross-examination says: "Q. You came with Mr. McKellar before this suit was started, and did you tell Mr. McKellar that you did not wish to go on with the trade, and he told you he would make you safe? A. Yes. Q. Do you remember telling him further that Mr. Taylor told you that he had retained the Walker interest and that they could not agree on a trade and she would not make it? A. I have heard him say that lots of times." And again he says: "Q. Did he say how much he would pay her? A. He did not say. Q. When did you last say that he wanted to make a settlement? A. After Mrs. Wilkinson died. Q. He did not tell you how much he owed her, did he? A. I never did know."

There can be little doubt, then, that both Taylor and Harvley took the lands with full knowledge of Mrs. Walker's claim in the same. If there were no other testimony than their own admissions, her claim was patent; and they were certainly possessed of such knowledge as would have required of them further inquiry, which could

not be terminated in any other way than full knowledge of the facts, for the paper was on record and Mrs. Walker actually present trying to effect a settlement of the differences between herself and Mrs. Wilkinson. Mr. Giles states that a part of the purchase price was withheld. This, however, he now seeks to correct, saying that the stenographer incorrectly reported his testimony. If this be conceded, it does not at all alter the conditions, for he says Mr. Graydon handled the matter and so far as he knows advised about the arbitration. It certainly cannot be assumed that Mr. Graydon overlooked what the record plainly disclosed. Mr. Giles says: "Q. Was this arbitration recorded in Abbeville? A. I suppose so. Q. Now, Mr. Giles, as I understood it, you made no examination of the record as to the rights of the parties? A. Mr. Graydon may have done that. Q. Who handled the transaction? A. Mr. Graydon. Q. So Mr. Graydon might have advised about this matter? A. I do not know. Q. Were you in the office with Mr. Graydon? A. I do not know; I think I was in the office the whole time. I recall that Mr. Walker was in the office."

When plaintiff's testimony is taken into consideration, it is full, clear, and convincing that both Taylor and Harvley were fully advised as to the situation and took the lands subject to Mrs. Walker's claim. The weight of the testimony establishes the fact that Taylor actually retained part of the purchase price. The testimony of plaintiff is clear as to this. Harvley's admission that he had heard Taylor so state many times, and the consideration paid, all support such finding against Taylor's denial.

On the question of notice, the law is well fixed that, where a party has such information as would be sufficient to require of him further inquiry, he will be held to have knowledge of such facts as the inquiry would reveal to him.

"These facts show that plaintiff had expressed and explicit notice of the existence of the deeds. If they had been duly recorded and inspected by plaintiff, he would have had no

more information, for the recording would not have estab-
lished the delivery.    He in point of fact had more infor-
mation than he could have derived from an inspection of
the record, if they had been recorded, for Evander Byrd
had admitted to him the existence of the deeds and recog-
nized their efficiency by asking him to pay taxes upon the
land listed in the name of the grantees.    The plain dictates
of common prudence required the plaintiff, under these
circumstances, to ascertain the actual state of facts, or be
bound by them as they were.    *City Council* v. *Page,* 17 S. C.
Eq. (Speers Eq.) 212; *Wallace* v. *Craps,* 34 S. C. L. (3
Strob.) 268; *Farr* v. *Sims,* 9 S. C. Eq. (Rich. Eq. Cas.)
122, 24 Am. Dec. 396; *Black* v. *Childs,* 14 S. C. 321; *Carri-
gan* v. *Byrd,* 23 S. C. 94, 95.

"  'The deed to Ford was not recorded, Ford's deed to
plaintiff was; the Circuit Judge did not err in charging the
jury that express notice, or such facts as should put a party
upon inquiry which would lead to notice, would answer the
same purpose as recording.' "

"Where circumstances are sufficient to put a party upon
inquiry, he is chargeable with constructive notice of every
fact which such inquiry will certainly disclose."

Mrs. Wilkinson died on the 15th day of July, 1913, and
in a short while this action was commenced, asking, among
other things, that the title to a one-third undivided interest
in the lands be declared to be in Mrs. Walker, the plaintiff,
and that a partition of the lands be decreed.

What relief, if any, should be granted under the facts as
above stated?    Upon the death of Mr. Benson, the plaintiff
unquestionably had a two-thirds interest in his estate.
When Mrs. Benson appropriated this estate and invested
it in the lands in question, the law created a trust in favor
of the child, and it could have been enforced against the
lands in her possession.    Among the many cases announcing
this doctrine, that of *Brazel* v. *Fair,* 26 S. C. 387, 2 S. E.
300, adopting the language of the Court in *Knatchbull* v.

*Hallett,* 13 Ch. Div., 696, is appropriate to the facts of this case: "He may have bought land with it, for instance, or he may have bought chattels with it. Now, what is the position of the beneficial owner? In that case, according to the now well-established doctrine of equity, the beneficial owner has the right to elect either to take the property, or to hold it as a security for the amount of the trust money laid out in the purchase; or, as we generally express it, he is entitled to his election, either to take the property, or to have a charge on the property for the amount of the trust money." See, also, *Sexton* v. *Hollis,* 26 S. C. 231, 1 S. E. 893; *Farrington* v. *Duvall,* 32 S. C. 590, 10 S. E. 944; *Goforth* v. *Goforth,* 47 S. C. 126, 25 S. E. 40; *Miller* v. *Saxton,* 75 S. C. 237, 55 S. E. 310.

When, therefore, Mrs. Wilkinson and Mrs. Walker submitted their rights to arbitration, the agreement on the part of Mrs. Wilkinson was a declaration of this trust by her, and the finding of the arbitrators fixed the equitable rights of Mrs. Walker in the lands, and the decision was placed upon record, giving the world notice not only of the interest of Mrs. Walker, but the character of it. Now, when Taylor and Harvley purchased with notice of this equity of Mrs. Walker, what position did they assume? They acquired no more by the conveyance than Mrs. Wilkinson had the right to convey. They placed themselves in the position occupied by her, and are bound to carry out decision of the arbitrators. So far as Mrs. Walker is concerned, they are trustees, holding the one-third interest in the lands for her benefit. This doctrine is announced in *Massey* v. *McIlwain,* 11 S. C. Eq. (2 Hill Eq.) 428, where the Court says: "The rule in equity is that an agreement in writing to convey will bind the estate and prevail against subsequent liens."

In *Crenshaw* v. *Thackston,* 14 S. C. 442, the Court, in even more certain terms, says: "In the case of *Massey* v. *McIlwain et al.,* 11 S. C. Eq. (2 Hill Eq.) 421, the high

equitable doctrine that where one purchases property sub-
ject to the equity of another, with notice of this equity, he
is bound by it, and holds the property subject to the equita-
ble rights of the other, was recognized and enforced.   The
rule in equity, as was said in that case, being that an agree-
ment in writing to convey land in consideration of an
adequate price will, in equity, bind the estate and prevail
against any subsequent lien; and, as was done in that case,
will follow the land into the hands of any subsequent pur-
chaser, with knowledge of the equity growing out of the
agreement."

In *Graham* v. *Nesmith,* 24 S. C. 292, where Sarah
Nesmith made a contract to convey certain lands to Graham,
and claiming that he had forfeited his rights under the con-
tract conveyed the same to her son, the Court held that the
son, having notice of the contract, was bound to perform
the contract.   He took subject to the equity of Graham and
occupied the relative position toward Graham which Mrs.
Nesmith had occupied before the conveyance by her.

In *Coney* v. *Timmons,* 16 S. C. 378, Timmons purchased
land at an execution sale, under an agreement, not in writ-
ing, that it was to be held by him in trust for Mrs. Coney.
The land was afterwards sold under execution against
Timmons and purchased by Garner, who had notice of
Mrs. Coney's rights.   The Court held that Garner took the
lands subject to Mrs. Coney's equity, and "the agreement
remained a subsidiary contract at the time of Garner's pur-
chase of which he had notice."

The case of *Peay* v. *Seigler,* 48 S. C. 515, 26 S. E. 893,
59 Am. St. Rep. 731, is conclusive of the facts of this case.
There Waller wrote his agent, Linder, to sell the lands on
certain terms.   The agent answered the letter, stating that
he could not find a purchaser on those terms, but that he
had an offer of $400, one-third cash and balance in three
annual installments.   Waller wrote his agent to make the
sale—$100 cash, and $100 per year for three years.   The

agent at once notified Jenkins, the proposed purchaser, who paid $100 in cash and took a receipt for same signed only by the agent of Waller.   As soon as Waller found who the purchaser was, he repudiated the sale, and afterwards conveyed the lands to Peay, who had notice of Jenkins' contract to purchase.   After holding that the contract signed by only one party was valid, and that Peay was not an innocent purchaser because of knowledge of Jenkins' right, proceeds : "If, then, the plaintiff cannot be regarded as a purchaser for valuable consideration without notice, he cannot be regarded as standing in the shoes of his grantor, Waller, who, as we have seen in the authorities cited, held the legal title as trustee for Jenkins, with a lien on the land to secure the payment of the unpaid purchase money, and hence the plaintiff holds the legal title merely as trustee for Jenkins, which he is bound to convey to Jenkins, or, he being dead, to his heirs at law upon the payment of the balance due under  the contract made with Jenkins."

The case under consideration is much stronger than a mere contract to convey, for, as has been shown, Mrs. Walker's portion of her father's estate, held by her mother as an administratrix *de son tort,* was invested in the lands and Mrs. Wilkerson in her agreement to arbitrate the difference between herself and Mrs. Walker declared that Mrs. Walker's funds were so invested and the interest of the *cestui que trust* was fixed by the award placed upon record, and Taylor and Harvley purchased with full notice of the same.   They hold this one-third undivided interest impressed with the trust and subject to it, and are trustees of the interest for her benefit.   Upon the death of Mrs. Wilkerson they were bound to carry out the agreement as expressed in the award of the arbitrators.   As was said in *Ellis* v. *Wood,* 30 S. C. Eq. (9 Rich. Eq.) 19: "For a purchaser from a trustee to be protected in his title, he must be a purchaser without notice, express or implied."   See, also, *Henderson* v. *Kinard, 29* S. C. 15, 6 S. E. 853.

In *Sullivan* v. *Latimer,* 35 S. C. 422, 14 S. E. 933, where Hewlet Sullivan purchased the land of his kinsman with full knowledge of the trust under which she held the same, the Court says: "It is very clear, then, that Hewlet Sullivan became trustee by his purchase, and took the land *cum onere.* When a person buys property that is subject to a trust, he takes it subject to the trust. *Smith* v. *Daniel,* 7 S. C. Eq. (2 McCord Ch.) 143, 16 Am. Dec. 641. 'The relations and privity between trustee and *cestui que trust* are such that the possession of one is the possession of the other, and there can be no adverse claim or possession during the continuance of the relation. It is the duty of the trustee, if he intends to claim the estate, to resign his trust and deliver over the possession which he received as trustee. He will then be in a position to maintain his claim, for no claim should be made through a breach of trust,' and no trustee * * * should be allowed to set up an adverse title.' "

This case is clear, also, as to the defense of the statute of limitations and adverse possession set up by defendants— being trustees, the statute is of no avail to them, even if it were otherwise applicable. *Howard* v. *Aiken,* 14 S. C. L. (3 McCord, 467) ; *Montgomery* v. *Cloud,* 27 S. C. 188, 3 S. E. 196; *Burnside* v. *Donnon,* 34 S. C. 289, 13 S. E. 465; *Amaker* v. *New,* 33 S. C. 28, 11 S. E. 386, 8 L. R. A. 687; *Jones* v. *Swearingen,* 42 S. C. 58, 19 S. E. 947; and numerous other cases in this State. Before the statute would have commenced to run in favor of Taylor and Harvley, they would have had to disavow the trust cast upon them by their purchase, this there is no effort to show. In fact, Mrs. Walker's rights under the award did not ripen until her mother's death, which occurred in 1913, and in the absence of some express repudiation of the award fixing her interests in the lands, by Taylor and Harvley, no right of action would have occurred until this time. Instead of repudiation, the testimony rather tends to show recognition, especially Harvley's, who says he heard Taylor say often that

he retained a part of the purchase price and would protect Harvley in his purchase.

Even if the case were treated without reference to trust relationship existing between Mrs. Wilkinson and Mrs. Walker, the result would be the same. While the award of the arbitrators is not sufficient to convey the legal title to Mrs. Walker, because it was not a statutory arbitration, yet it fixed in her an equitable claim, which, as shown above, will be enforced against purchasers with notice of the same. The Courts favor arbitration, and will uphold them, whether statutory or otherwise. As was said in *Greenville* v. *Spartanburg,* 62 S. C. 105, 40 S. E. 147: "Courts favor awards and will indulge every reasonable presumption to uphold them, and whoever assails them has the burden of clearly establishing their invalidity." See *Bishop* v. *Mfg. Co.,* 78 S. C. 315, 58 S. E. 939. In *Garvin* v. *Garvin,* 55 S. C. 360, 33 S. E. 458, it was held that, while an award by a board of arbitrators would not convey the legal title, yet it would estop the parties from claiming against it, and, of course, if the arbitration would estop Mrs. Wilkinson it would estop Taylor and Harvley, who purchased subject to it and with full knowledge. As was said in *Garvin* v. *Garvin, supra*: "To say that a man, after an important question of title, which he has submitted directly to arbitrators, has been decided against him, can elude the result of such solemn decision by simply saying that I will not stand by it, and you can sue me for liquidated damages, would be to emasculate all of the efficient principles of arbitration and award."

There is no question as to the identity of the lands referred to in the award. It refers to the 661-acre home place, and all parties recognized the award as having reference to these particular lands. The defendant, Taylor, claims to have purchased a mortgage made by Mrs. Wilkinson to Parker & McGowan over the lands, and to have made her a further loan on the lands prior to the conveyance to him, and at that time had no notice or knowledge of the rights of

equity of Mrs. Walker. He takes the position that as to these mortgages he was an innocent purchaser without notice. If this be conceded, it would not assist him. The mortgages were nothing more than securities for his debt, and he claims that only $235 were due on them when the conveyances were made. The purchase price, according to his version, was $430, and, according to plaintiff's testimony, $660. Adopting the price as stated by Taylor, Mrs. Wilkinson's two-thirds interest in the lands—to say nothing of her life tenure of the whole of the lands—was more than sufficient to pay these mortgage debts. Whether he was an innocent purchaser of the mortgages or not, he could claim no more under them than the payment of the debts, and when these were discharged his rights as an innocent purchaser of them ceased. That he claims under these mortgages, therefore, is unavailing.

For the reasons stated, I am satisfied that Mrs. Walker has an equitable title to one-third undivided interest in the lands described in the complaint, and, therefore, it is ordered, decreed, and adjudged that the plaintiff be, and she hereby is, declared to be the owner in fee of a one-third undivided part of the lands described in the complaint. It is further ordered that the plaintiff have leave to apply at the foot of this decree for the partition and division of the said lands and any other further relief consistent with the terms of this decree.

*Messrs. Featherstone & McGhee* and *Giles & Ouzts,* cite: *As to effect of the so-called arbitration. Oral submission not sufficient:* Morse 50; 1 Brev. 448; 2 Am. & Eng. Enc. of L. 544 and 546. *Award exceeded submission:* 2 Bay. 94; 2 A. & E. Enc. of L. 738; 42 Am. Dec. 534; Morse 55 and 63; *Ib.* 428. *Effect:* 2 A. & E. Enc. of L. 801; 12 Am. Dec. 422; 94 S. C. 75; 55 S. C. 360; 1 McM. 376. *Creation of remainders:* 2 Bouvier's Inst. 283; 24 A. & E. Enc. of L. 382; Brown St. Fraud, sec. 229, sec. 6; 22 Am.

Dec. 193; 2 Leading Cas. 278; Coke's Littleton, 143a. *Mrs. Wilkinson held legal title in trust, and statute ran when she renounced the trust:* 87 Am. St. Rep. 160; 40 S. C. 168; 50 S. C. 128; 72 Am. St. Rep. 160; 85 S. E. 373; 10 Wheaton 174. *Laches:* 24 S. C. 99. *Adverse possession:* 2 Hill L. 492; 3 Strob. 498; 47 Am. Dec. 463. *Angel on Limitations:* 478 to 482; 32 S. C. 253; 61 S. C. 276; 63 S. C. 154; 40 S. C. 168. *Bona fide purchaser without notice:* 23 Enc. 486, 487, 477, 478, 513; 21 *Ib.* 586; 2 Pom. Eq. 756 to 769.

*Messrs. Grier, Park & Nicholson,* for respondent, submit: *Taylor took with notice of the arbitration:* 14 S. C. 442; 11 S. C. Eq. 428; 24 S. C. 292. *Trusts:* 48 S. C. 496; 29 S. C. 15; 35 S. C. 422. *Awards:* 62 S. C. 105; 78 S. C. 315; 55 S. C. 360. *Adverse possession:* 3 McC. 467; 27 S. C. 188; 42 S. C. 58.

March 13, 1916.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action by the plaintiff asking that she be adjudged the owner of one-third interest in a tract of land described in the complaint, and for the partition. The plaintiff's father, Joseph Benson, was killed in the war, leaving as his heirs at law his widow, afterwards Mrs. Wilkinson, and the plaintiff, then a minor. Mrs. Wilkinson was the stepmother of the plaintiff. Mr. Benson left some personal property, but no land. The widow took possession of the personal property without administration, sold it, and purchased a lot in New Market. This lot she sold and with the proceeds of sale purchased the land described in the complaint. A dispute arose between Mrs. Walker, the plaintiff, and her stepmother about the amount of interest of Mrs. Walker in the land. It was agreed by these two ladies to submit the difference to arbitration. Mrs. Wilkinson gave

her bond to abide by the award of the arbitrators in which she states the source of the purchase money as above set forth. The arbitrators awarded to Mrs. Walker one-third of the land, after Mrs. Wilkinson's death. The agreement to arbitrate is not in the record. Subsequently to the award, Mrs. Wilkinson sold the land to the appellant, Taylor, and Taylor sold to Harvley. The defendants answered denying notice and setting up the bar of the statute. Judge Moore, who tried the case on Circuit, in an elaborate and able decree (let the decree be reported) found that the appellants had full notice of the rights of the respondents, and adjudged that "she hereby is declared to be the owner in fee of one-third undivided part of the land described in the complaint." From this judgment the defendants appeal upon several exceptions, but state in the argument as follows:

"The grounds of appeal will not be taken up *seriatim,* in the presentation of the case, but the argument will be confined to the following points:

"First. Did plaintiff acquire any interest in the land, by the so-called arbitration?

"Second. Is the action barred by the statute—has defendant, Harvley, title by adverse possession?

"We think that under these heads all the questions may be discussed."

1. Did the plaintiff acquire any interest in the land, by the so-called arbitration?

This is a purely speculative question in this case. The property was bought with money belonging to Mrs. Wilkinson and Mrs. Walker, and was bought by Mrs. Wilkinson in part with Mrs. Walker's money, and there was a resulting trust in favor of Mrs. Walker, and there is nothing in the record to indicate that Mrs. Wilkinson ever denied Mrs. Walker's interest; but while in possession, with the legal title in herself, Mrs. Wilkinson executed the bond set out in the record. However ineffectual this bond may be to sustain the arbitration, it was good and effectual to show that

Mrs. Wilkinson acknowledged the interest of Mrs. Walker. It is very clear that Mr. Taylor, Mrs. Wilkinson's grantee, knew and had full notice of Mrs. Walker's claim. By his own statement he knew that Mrs. Walker claimed an interest in the land and had come to town to look after her interest and had her husband present at the sale to represent her. The bond in which the acknowledgment was made was also there and was turned over to him along with the deed. In answer to the question, "You did not take the trouble to find out the nature of that claim?" said, "It was of no interest to me." It was of interest to him, and he is charged with all the knowledge he could have had that day for the asking. He is charged with this full and complete information in ordinary fairness as well as in law. He took his deed, then, charged with the trust under which it was held by his grantor, Mrs. Wilkinson. Mr. Harvley also knew it. "Do you remember telling him further that Mr. Taylor told you that he had retained the Walker interest, and that they could not agree on a trade and she" (Mrs. Walker) "would not make it?" Mr. Harvley answered, "I have heard him say that lots of times." Now, if the arbitration proceedings are void, as such, then Mrs. Walker is entitled to a two-thirds interest; but, inasmuch as she has claimed only one-third, she cannot get more. If, on the other hand, the arbitration proceedings are binding, Mrs. Walker still gets one-third interest. On either horn of the dilemma, Mrs. Walker gets one-third interest.

2. "Second. Is the action barred by the statute—has defendant, Harvley, title by adverse possession?"

The action is not barred, and Mr. Harvley has no title by adverse possession. When Mrs. Wilkinson delivered the deed to Mr. Taylor, she also delivered to him a written acknowledgment that she did not claim the entire estate. Further than this, this Court has no doubt from the record that Mr. Taylor reserved a part of the purchase money, in acknowledgment on his part and in recognition of Mrs.

Walker's interest.   Mr. Taylor cannot sustain his claim that he then threw off the trust.   Mr. Harvley heard Mr. Taylor say that "lots of times," and he is bound.

3. It is further urged that Mr. Taylor had bought and surrendered certain mortgages that were given to those who had no notice, and as to these amounts Mr. Taylor should be protected by a Court of equity.

Judge Moore held that the interest of Mrs. Wilkinson fully covered these amounts.   We fully agree with his Honor in this finding.

All exceptions are overruled, and the judgment appealed from is affirmed.