### 17825

Julia Mae Sports BRUNSON, Orin Thomas Sports and David Sports, Respondents, v. Ray SPORTS, Individually and as Executor of the Last Will and Testament of Ida Dukes West, and R. A. Dukes, of whom R. A. Dukes is, Appellant.

(121 S. E. (2d) 294)

*Messrs. Henry E. Davis,* of Florence, and *Shuler & Harrell* and *R. E. Harrell,* of Kingstree, *for Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondents,*

August 18, 1961.

JAMES M. BRAILSFORD, JR., Acting Associate Justice.

This is an appeal from a decree of the Common Pleas Court for Williamsburg County impressing a trust, for the benefit of respondents, upon a tract of land to which appellant has legal title.

The land in question was conveyed to Ida Dukes West by J. F. Montgomery on October 5, 1929, and was by her conveyed to R. A. Dukes, the appellant, on December 31, 1951. Mrs. West died on June 10, 1955, and this action was commenced by respondents in May of 1956.

The genesis of the controversy was the administration by Mrs. West of the estate of Corinne Dukes, who died intestate on January 24, 1929, leaving as her heirs at law, her sister, Mrs. West, and her niece and nephews, Julia Mae Sports, now Brunson, Orin Thomas Sports, David Sports and Ray Sports, of whom the first three named are respondents, and the last is a non-appealing defendant.

Mrs. West applied for letters of administration, and proceeded to act as administratrix, although the record does not show that an appointment was made by the probate court.

As administratrix of the estate, she commenced an action against J. F. Montgomery on certain notes due her intestate, aggregating about $1,000.00.

The gravamen of the complaint in this action is that, instead of pursuing the notes to judgment, Mrs. West accepted from Montgomery the conveyance to herself, individually, of title to the land in dispute, in satisfaction of the grantor's indebtedness to the Dukes estate. Hence, a resulting trust arose in favor of those beneficially entitled to the estate, of which appellant had notice when he purchased the land from Mrs. West.

The factual premise, upon which the claimed trust is based, has been established by clear and convincing evidence, as will be seen.

A. C. Hinds, Esquire, late of the Williamsburg County bar, and a member of the firm of Hinds and Meadors, represented Mrs. West in connection with the administration of the estate. The Montgomery deed was delivered to him on October 5, 1929, and he promptly had it recorded. On the same day he wrote to Mrs. West, advising her of this and stating:

"It is necessary for you to come into the office and sign a declaration of trust that you are holding the title to this land in trust for the estate of your sister."

Following this, Mrs. West signed and verified a petition to the probate court, in which the facts relating to the Montgomery notes, and acceptance of the deed in satisfaction thereof, were fully set forth. The petition expressly declared the trust upon which the title had been accepted, in these words:

"* * * that while the said deed is made to your petitioner individually, she holds the title to the said tract of land in trust for those entitled to the property of the estate of Miss Corinne Dukes, according to law."

This petition was produced by the surviving partner of Hinds and Meadors from the office file on the Dukes estate. Attached to it was an unsigned order, prepared for execution by the probate judge, approving the transaction and declaring the legal title to be held by Mrs. West, "in trust for those entitled to the property of said estate in accordance with the laws of the State of South Carolina."

The original of the Hinds letter was found among Mrs. West's papers after her death, and a copy was produced from the office file, in which the petition and other papers pertaining to the estate were found.

No question of the authenticity of the letter or of the petition was raised or suggested. As contemporary acts and declarations they were evidence of the most satisfactory character. They compel conviction that the con-

sideration for the Montgomery deed was the surrender of the Montgomery notes, in which respondents had an interest.

Appellant's counsel objected to the admission in evidence of these documents upon the grounds that they were not public records, were not notice and were irrelevant. These objections were properly overruled. The letter and petition were offered as proof of the existence of the trust, not as evidence of notice of it to appellant.

> The equitable principle applicable to the established
> ■ facts is quoted from *Kirton v. Howard,* 137 S. C. 11,
> 134 S. E. 859, 865:

"Where trust funds are used in the purchase of property and title is taken in the name of the fiduciary * * * a resulting trust immediately arises in that property in favor of the person or persons entitled to the funds with which the property is purchased." (Citing authorities.)

In *Haynsworth v. Bischoff,* 6 S. C. 159, an administrator, after suing notes belonging to the estate to judgment, became the purchaser of land sold under the judgment, taking title in his own name. The court held that "he became in equity a trustee for the use of the estate. It was, in substance, the ordinary case of a trustee purchasing lands with trust funds and taking title in his own name, whence arises in equity a trust for those entitled beneficially to the trust funds. The fact that the trustee was also administrator does not affect the application of the equitable principles under which a resulting trust is raised; the trust is moulded to subserve the interests of the administration. *McNeil v. Morrow,* Rich. Eq. Cases 172."

In *Walker v. Taylor,* 104 S. C. 1, 88 S. E. 300, the widow of an intestate, as administratrix *de son tort,* invested funds of the estate in a house, which she later sold and invested the proceeds in land, taking title in her own name. It was held that a resulting trust arose in favor of the intestate's only child, proportioned to her interest in the estate, which could be enforced against a purchaser with notice of her equity.

The transaction which culminated in the Montgomery deed was, in substance, the ordinary case of a fiduciary purchasing land with trust funds and taking title in her own name. Immediately, there arose in equity a trust for those beneficially entitled to the estate, proportioned to their interests. The later manifestation, in writing, of Mrs. West's intention to hold the title in trust, demonstrated her good faith, and facilitated proof of the facts from which respondents' rights arose. It, in substance and effect, placed her in the same relationship to the property and to the *cestuis que trust* as that of an express trustee.

We proceed to consider whether the trust has been terminated or defeated on any ground assigned by appellant.

Two exceptions charge error in overruling the defense of laches. The first of these is upon the theory that the respondents' claim is based upon the fraud of Mrs. West, in taking title in her own name, which fraud was discovered by respondents more than six years prior to the commencement of the action. Therefore, "the Court was bound to apply by analogy the period prescribed by the Statute of Limitations." This exception is founded upon a misconception of the complaint and falls of its own weight.

The other charges error in overruling the defense of laches, upon the ground that the uncontradicted evidence shows that the action was commenced twenty-seven years after the Montgomery deed was executed and twenty years after the youngest respondent attained his majority.

For convenience, this exception will be disposed of with another which charges error in overruling the defenses of adverse possession and title by prescription.

The Sports children were all minors when the Montgomery deed was executed. Julia Mae and Orin Thomas, the two older, were between sixteen and eighteen years of age. They testified that they were advised of the transaction, and understood the nature of their interests in the property.

They further testified that, at the request of their aunt, they agreed for her to use the small income ($100.00 to $125.00 per annum) during her lifetime, they expecting to be reimbursed at her death.

Appellant's reliance upon the defenses of laches, adverse possession and title by prescription is founded upon the premise that time began to run, for the purposes of these defenses, when Mrs. West took possession under the Montgomery deed. It is elementary that possession does not give currency to the statute, or to the prescriptive period, nor does it raise a duty on the owner to assert his rights against the one in possession, unless such possession is adverse. *Metz v. Metz*, 48 S. C. 472, 26 S. E. 787; *Bryan v. Donnelly*, 87 S. C. 388, 69 S. E. 840.

Was Mrs. West's possession adverse to respondents' rights?

"The principle is just and well-established that, where one's possession was begun in privity with or in subservience to the title of another, a *quasi* fiduciary relation is established, and, before a foundation can be laid for the operations of the statute of limitations or the defense of adverse possession by the acquisition of any outstanding title, a clear, positive, and continued disclaimer of the title under which he entered and the assertion of an adverse claim must be brought home to the other party. Until the trust is openly repudiated, the *cestui que trust* may rely upon the integrity of the trustee without endangering his right by lapse of time." *Bradley et al. v. Calhoun*, 125 S. C. 70, 117 S. E. 811, 815.

Where one enters into the possession of land, recognizing the rights of others therein, "he cannot make his possession adverse, without either giving notice of his design to the owner, or doing some act indicative of his adversary position." *Moore v. Johnston*, 29 S. C. L. (2 Spears) 288.

Mrs. West's possession as trustee was the possession of the *cestuis que trust*, 34 Am. Jur., Limitation of Actions; *Walker v. Taylor*, 104 S. C. 1, 88 S. E.

300, and could not be adverse to them without an open disavowal of the trust. 90 C. J. S., Trusts, § 183; *Sullivan v. Latimer,* 35 S. C. 422, 14 S. E. 933. While this rule does not always apply to implied trusts, it is fully applicable here. Annotation: Limitations Statute—Resulting Trusts. 45 A. L. R. (2d) 382. Compare 55 A. L. R. (2d) 220. Annotation: Limitations Statute—Constructive Trust.

At or about the time Mrs. West entered into possession under the Montgomery deed, she recognized the respondents' interest therein, orally and by written declaration. There is no semblance of evidence of any act or declaration on her part, which was hostile to their rights, prior to the conveyance to appellant. This action was commenced within three years after they learned of this conveyance, and shortly after they discovered the documentary evidence on which proof of the trust was based.

We will not review the numerous authorities cited in appellant's brief in support of the proposition that lapse of time is a bar to this action. All have been considered and none is found to be inconsistent with our view that time did not begin to run against respondents, for the purpose of any defense relied upon, so long as Mrs. West retained possession of the property, without an open repudiation of the trust. See A. L. R. annotations, *supra.*

We conclude that Mrs. West's possession was not adverse. Therefore, the defenses of adverse possession and title by prescription were properly overruled. Since the exception to the failure of the circuit judge to sustain the defense of laches is based *solely* on lapse of time between the execution of the Montgomery deed and the commencement of the action, the same consideration requires that it be overruled.

We next consider the exceptions which charge error in refusing to sustain the defense of *bona fide* purchaser for value without notice. As to it, the circuit judge found:

"I also find that R. A. Dukes had actual notice that Ida Dukes West held this property as trustee for herself and her niece and nephews. This later conclusion is based upon the testimony taken before the Master and upon my observation of the defendant R. A. Dukes upon the witness stand."

It would serve no useful purpose to review the conflicting testimony on which this controlling issue of fact was resolved in favor of respondents. The conclusion reached is amply supported by the evidence and no sufficient reason for disturbing it has been advanced.

Appellant's counsel do not comment upon or argue the weight of the evidence respecting notice. Instead, they contend that appellant was entitled to rely upon an examination of the record title, made for him by a competent attorney, which did not disclose respondents' interest.

The law is well settled that actual notice of an outstanding equity will cut off the defense of *bona fide* purchaser. 92 C. J. S., Vendor and Purchaser, § 324; 90 C. J. S., Trusts, § 444.

"As matter of law, plainly, if Lakin had verbal timely notice from Bell that the title was not good, he cannot hold it against Bell, *although reputable counsel advised him rightly that his paper title was good." Bell v. Bell,* 99 S. C. 501, 84 S. E. 369. See later appeal in same case reported in 103 S. C. 95, 87 S. E. 540.

A number of exceptions complain of error in refusing appellant's motion to dismiss the action, upon the ground that "the suit could not be maintained under the Declaratory Judgment Act."

The complaint states a cause of action for equitable relief. It makes no reference to the Act of 1948. Section 10-2001 *et seq.,* Code of Laws, 1952. None was needed, because appellant held possession of the trust property in defiance of the *cestuis que trust.* Therefore, the rights of the parties were subject to adjudication under the ordinary

equity jurisdiction of the court. 16 Am. Jur., Declaratory Judgments, Section 7. The pleadings and procedure below were appropriate to the exercise of this jurisdiction. The court held that the action was within the comprehensive coverage of the Act, and overruled the motion on this ground. With identical result, it could have been overruled upon the ground that the action was maintainable in equity. The motion to dismiss was without merit and was properly overruled. The issues now having been decided on the merits, it would be idle to inquire whether the ground assigned for refusing to dismiss was a proper ground.

The circuit decree fixed the value of the land, at the time of its conveyance to appellant, at $6,000.00, and fixed its rental value at $200.00 per annum. Judgment was awarded against the estate of Mrs. West, in favor of each of the respondents, and in favor of the defendant Ray Sports, for $750.00 as his respective (one-eighth) interest in the land; and in favor of each for $775.00 as his (one-eighth) share of the value since 1929.

There has been no appeal from the judgment against the estate and no issue thereabout is before us.

The decree also impressed a trust upon the land in favor of the respondents, and of the defendant Ray Sports, in the amounts of said judgments. The appellant has excepted to the amount of annual rent allowed, to the allowance of rent as a charge on the land for the years 1929-1951, inclusive, and to the failure of the decree to allow his claim for betterments.

The evidence shows that appellant, since his acquisition of title, has expended substantial sums on drainage, clearing additional acreage and in erecting and repairing buildings. The decree based the amounts awarded to respondents on the market and rental value of the land prior to these improvements. This was favorable to appellant and there has been no appeal. The result is that appellant, alone, will benefit from any enhancement of the value of the property attributable to such improvements.

As has already been seen, appellant took title to the land charged with a trust, to the extent of one-half of the beneficial interest in the land. This involved the duty to account for one-half of the income thereafter accruing, so long as he retained exclusive possession. However, we think that the circuit judge erred in charging the land, in his hands, with income previously collected and consumed by his predecessor, with the consent of respondents.

The respondents contend, in support of this phase of the decree, that "the entire *corpus* of the trust * * * was subject to the right of respondents to have an accounting for rent * * *", because Mrs. West "had agreed to account to her niece and nephews from the proceeds of her part of the land." To hold that this resulted in charging the land with accrued income would be to enforce a parole agreement, creating an express trust, in violation of Section 67-1, Code of Laws, 1952; and which was not alleged in the complaint.

The evidence shows that Mrs. West received as rent for the property the sum of $125.00 per annum during the three years immediately preceding its conveyance to appellant. Previously she had received $100.00. There is no testimony tending to establish a rental value in a different amount from that actually received. Therefore, the circuit judge should have found the rental value to be $125.00 per annum, instead of $200.00.

All of the exceptions have not been specifically referred to, but all have been considered, and, we think, adequately disposed of. All exceptions are overruled, except those relating to the period of time and annual rate used in calculating the amounts charged against the land for rent. As to these the decree appealed from is modified according to the views herein expressed.

Modified and remanded.

Taylor, C. J., and Oxner, Legge and Moss, JJ., concur.