## 11058

### BRADLEY v. CALHOUN

#### (117 S. E., 811)

1. LIFE ESTATES—WHETHER STEPMOTHER OF REMAINDERMEN HOLDING UNDER DEED PURPORTING TO CONVEY FEE SIMPLE ACQUIRED TITLE HELD FOR JURY.—Whether a grantee under a deed of the Probate Court which purported to convert a life estate into a fee simple acquired title by holding adversely for more than the statutory period after the death of life tenant as against remaindermen who were stepchildren of grantee *held* for the jury.

2. ADVERSE POSSESSION—NOTICE MUST BE GIVEN OF REPUDIATION OF TITLE BEGUN IN PRIVITY WITH OR IN SUBSERVIENCE TO ANOTHER'S TITLE BEFORE STATUTE RUNS.—Where one's possession was begun in privity with or in subservience to the title of another, a *quasi fiduciary* relation is established, and before a foundation can be laid for the operation of the statute a clear, positive, and continued disclaimer of title under which he entered and an assertion of an adverse claim must be brought home to the other party.

3. ADVERSE POSSESSION—RELATION OF STEPMOTHER TO STEPCHILDREN NOT TRUST RELATIONSHIP PREVENTING ACQUISITION OF ADVERSE INTEREST.—The mere relation of a stepmother to her stepchildren is not a trust relation which prevents her from acquiring an interest in property adverse to them.

Before SHIPP, J., Allendale, September, 1921.    Affirmed.

Action by J. R. Bradley and others against Belle B. Calhoun.   Judgment for defendant and plaintiffs appeal.

*Messrs. Hendersons, Brown & Bush* and *Harley & Blatt,* for appellants, cite:   *Directed verdicts:*   112 S. C., 7; 117 S. C., 291.   *Representation by one of a class:*   15 Enc. Pl. & Pr., 630; 30 Cyc., 136; 22 S. C.,  331; 84 S. C., 30; 61 S. E., 218; 76 156.   *Holding with knowledge of trust, cannot be adverse to cestui que trust:* 35 S. C., 422; 26 R. C. L., 1236, 1248, 1325; 1 R. C. L., 35; 23 S. E., 233.

*Messrs. Holman & Boulware* and *J. E. Tobin,* for respondents, cite:   *Proper to prove execution of mortgage as showing character of mortgagor's claim:* 65 S. C., 251. *Where burden of proof is on a party the truth of testimony is for the jury:* 85 S. C., 481; 89 S. C., 484; 93 S. C., 71; 106 S. C., 267.   *Integrity of judicial proceedings and judicial sales:*   Rice 232; 4 Rich. Eq., 152; 100 S. C., 169; 106 S. C., 492; 60 S. E., 706; 58 S. E., 2; 38 S. E., 209; 25 S. E., 74; 9 L. Ed., 490; 62 S. E., 948; 79 A. S. R., 352. *Notice from public records:*   26 S. C., 273; 29 S. C., 84; 77 S. C., 139; 80 S. C., 114.   *Estoppel by record:*   34 S. C., 189.

June 13, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for partition of a tract of land containing 153 acres, which formerly belonged to one William Cave.   The plaintiffs are the children and grandchildren of John W. Bradley, who was a grandson of William Cave.   The defendant is a daughter of John W. Bradley by a second wife, Julia R. Bradley, and is her only child.   There were several children of John W. Bradley by his first wife, who with their representatives in interest, are the plaintiffs.   The plaintiffs claim as tenants in common with the defendant of

the land in question, they being entitled to seven-eighths and the defendant to one-eighth, under the will of William Cave, dated May 11, 1849, and probated in Barnwell County, November 16, 1855.

## STATEMENT OF FACTS

The following facts appear to be undisputed:

The will of William Cave contains a devise of all of the testator's real estate to his executors, in trust for certain grandchildren named, among whom was John W. Bradley, to be equally divided among them, and, upon the death of any such, to the child or children then alive, with the power to sell for division and investment upon similar terms. In 1856, the year after the death of William Cave and the probate of his will, a proceeding for the partition of his real estate was instituted by the parties interested, which resulted in 'a decree by Chancellor Johnstone, dated February 12, 1856, confirming the report of the commissioners in partition, which allotted to John W. Bradley the 153-acre tract in controversy, "in subjection to the limitation of the last will and testament of William Cave." By this decree there was also allotted to John W. Bradley another tract of land containing 237 acres, upon the same limitations; it is not involved at all in this litigation.

The estate of William Cave remained in process of settlement up to the year 1861. At that time a bill for accounting by the executors was instituted in the Court of Equity. As appears from the order of reference, the referee's report, and the decree, which are the only papers connected with the action which have been found, that action was entitled *"Robert Bradley et al. v. M. J. Cave and J. M. Cave, Executors, et al."* In the referee's report he states the accounts of the various parties, and finds that John W. Bradley was indebted to the executors in the sum of $2,064.84; that the executors had on hand $570.89 for which John W. Bradley was entitled to credit; he therefore recommended that John

W. Bradley be required to pay to the executors the difference, $1,493.95, and that the 153-acre tract, in which, under the will John W. Bradley had only a life estate, be vested in him in fee simple. On April 23, 1861, Chancellor Inglis signed a decree confirming the referee's report. He decreed that John W. Bradley pay the sum ascertained, and "that the 153 acres of land vested in John W. Bradley by the order made in the cause of *Robert Bradley, et al. v. Marion Cave et al.,* dated 12th of February, 1856, and the 86½ acres vested in Robert Bradley by the said order, be vested in them in fee simple." The fragmentary record of this proceeding does not affirmatively show that the children of John W. Bradley, who at that time were aged 12, 10, 8, 5, and 3 years, were parties defendant thereto.

It appears that immediately after the decree of Chancellor Johnstone in the partition proceeding of 1856 was signed, John W. Bradley went into possession of the 153-acre tract, holding it, as provided in the decree, as a life tenant, with remainder over to such of his children as might be alive at his death. John W. Bradley died in 1875, intestate, and his son William H. Bradley was appointed and qualified as administrator of his estate.

In 1877 William H. Bradley, as administrator of the estate of John W. Bradley, instituted an action in the Court of Probate of Barnwell County for the sale of the real estate of John W. Bradley, in aid of the personalty, to pay debts. The widow and the eight children of John W. Bradley were made parties defendant, and were all legally served with summons. At that time three of the children were of age; William H., 28, Elizabeth, 26, and Martha, 24. The others, J. R., 20, B. F., 19, Carolyn, 16, Mary, 12, and Bell, 6, appeared by guardian *ad litem* who answered denying knowledge of the matters set forth in the complaint claiming such interest in the premises as the children might be entitled to, and submitting their rights and interests to the protection of the Court. The complaint in that proceeding alleged that

at the time of his death John W. Bradley was "seized in fee simple" of the 153-acre tract, describing it. It does not appear that there were any answers filed or served by any of the parties except the minor defendants, by guardian *ad litem.*

On March 20, 1877, the Probate Judge granted a decree of sale in conformity with the prayer of the complaint. Before the sale took place the widow, Julia R. Bradley, claimed and was duly assigned dower; 33 acres of the 153 were surveyed and allotted to her under regular proceedings, which were confirmed on November 10, 1877. The sale was ordered for December 3, 1877, the dower of Mrs. Bradley, a life estate in the 33 acres allotted to her, being excepted by the order of sale. The sale was duly advertised, and had on December 3, 1877, at which the property was bid off by Mrs. Bradley at $115. She complied with the terms of sale, and on December 4, 1877, received from the Probate Judge a conveyance in fee simple of the 153 acres, "subject to and saving the life estate of Julia R. Bradley in 33 acres of land, parcel of the above-described tract," describing it. The deed was recorded December 31, 1877.

It appears that Mrs. Bradley continued in possession of the property, some of her stepchildren and her own child living with her for a while and at various times, until her death in 1910. After her death the defendant, Mrs. Calhoun, appears to have been in possession, claiming the property as sole heir-at-law of her mother, through the deed of the Probate Judge.

From the date of the deed of the Probate Judge in 1877 to the date of her death in 1910 it appears that Mrs. Bradley continued in possession of the property 33 years, treating it as her own, and without claim or objection on the part of any of the children of John W. Bradley, three of whom were of age at the time of the sale, one of them, as administrator, having instituted the action which resulted in her acquisition of a fee simple deed, under an allegation in the complaint

that the property belonged in fee simple to John W. Bradley, the other two who were of age making default, and the five minor .children appearing by guardian *ad litem.*

## STATEMENT OF PROCEEDINGS

In November, 1916, the plaintiffs, the children of John W. Bradley by his first marriage, together with the children of certain ones who had died, instituted the present action against· the defendant, a daughter by the second marriage, for partition of the 153 acres. The defendant interposed several defenses: (1) *Res adjudicata* by reason of the Inglis decree of 1861; (2) adverse possession; (3) presumption of a grant; (4) Statute of Limitations; (5) *res adjudicata* by reason of the Probate Court proceedings. The case came on for trial before Circuit Judge Bowman and a jury in February, 1920, the issue submitted to the jury being the legal issue of title; this stipulation having been entered into by counsel, as appears in the record:

"By stipulation of counsel all equitable issues raised in the case were reserved until the issue of title was adjudicated."

At the conclusion of all of the evidence in the trial of the legal issue of title before Judge Bowman, he directed a verdict in favor of the defendant. Exactly upon what grounds does not distinctly appear in the record of the present appeal. The plaintiffs appealed from the order of Judge Bowman directing a verdict in favor of the defendant, and this Court (116 S. C., 7; 106 S. E., 843), entered the following judgment:

"Judgment reversed, and a new trial granted."

The opinion appears to proceed upon the assumption, which will be taken as well founded, that the order directing a verdict was based upon the three grounds:

(1) That the plaintiffs were concluded by the Johnstone and Inglis decrees, as *res adjudicata.*

(2) That the defendant's defense of adverse possession, presumption of a grant, and the Statute of Limitations was sustained.

(3) That the proceedings in the Probate Court were *res adjudicata* upon the question of the fee simple title in John W. Bradley.

As to the admissibility and effect of the Johnstone and Inglis decrees, the Court said:

"We do not see any error on the part of his Honor in admitting in evidence for what it was worth the record, in so far as the tract of land, the subject of this controversy, is concerned. But after they were admitted in evidence his Honor should have submitted the question as to whether they were parties or not to these proceedings. * * * As we have said before, the records or parts of them produced and where they come from should be admitted in evidence for what they are worth, but the question should have been submitted to the jury as to whether or not these appellants' rights had been adjudicated by the Johnstone and Inglis decrees, or whether, notwithstanding these decrees, they are to be entitled to assert their rights as remaindermen under the will of William Cave."

This is interpreted to mean that the records were admissible in evidence, but that it was a question of fact whether or not the plaintiffs were parties to those proceedings, and that for this reason the motion for a directed verdict in favor of the defendant should not have been sustained upon this ground.

as to the second ground upon which the motion may have been granted, that the defense of adverse possession, presumption of a grant, and the Statute of Limitations had been sustained, the Court said:

"All questions of ouster, adverse possession, the minorities of the appellants, affecting the different periods of possession, whether of adverse possession, Statute of Limita-

tions, or presumption of grant, are disputed questions, and
should be submitted to the jury."

As to the third ground upon which the motion may have
been granted, that the Probate Court proceedings were *res
adjudicata,* the Court said:

"If John W. Bradley only had a life estate in the land,
nothing else was sold, and his widow only purchased and
acquired such title as he had."

In effect that those proceedings were not *res adjudicata* of
the fact alleged in the complaint that John W. Bradley had
the fee simple title to this land.

In connection with this matter the Court further held:

"If it should turn out the fee was in him, then she pur
chased that; but there is testimony in the case that John W.
Bradley frequently asserted that he had only a life estate,
and that his widow knew that, and should be charged with
that notice when she purchased at Probate Court's sale."

The judgment of the Circuit Court, based upon the direc-
tion of a verdict in favor of the defendant, was reversed by
this Court, and the case was remanded to the Circuit Court
for a new trial upon the issue of legal title. The case then
came on for trial a second time before Circuit Judge Shipp
and a jury in September, 1921. The evidence was practi-
cally the same as on the first trial, the substance of which is
given above. At the close of all of the evidence the plain-
tiffs moved for a directed verdict in their favor, the effect
of which would have been to declare the legal title to seven-
eighths undivided interest in the property to be vested in the
plaintiffs and one-eighth in the defendant. The motion was
made upon the several grounds hereinafter set forth. The
motion for a directed verdict was refused, the presiding
Judge ruling:

"The Supreme Court ruled on this case before, and the
Judge directed a verdict here, and when it went to the Su-
preme Court they sent it back, and said certain things must
be submitted to the jury—that is, the Statute of Limitations,

and ouster, and presumption of a grant—and I do not see how I can get around that, because, even if she did not have a title under the decree, she might have had a color of title. If Mrs. Bradley did not buy anything from the Probate Court, if she got a deed to the land in question, she got what we call a color of title—that is, anything that is color of title may be a letter or a plat—and she went in and held it adversely, while it might not have been a good title at first, yet I think I ought to submit this case to the jury."

The case was then submitted to the jury, apparently without requests to charge, under a charge of the Court to which no exceptions have been entered. The jury found a verdict in favor of the defendant for the land in dispute, and from the judgment entered thereon the plaintiffs have appealed.

The main question raised by the exceptions is alleged error in refusing the plaintiffs motion for a directed verdict. As counsel for the appellants state, "All other questions presented by the exceptions are merely incidental thereto." In view of this statement, and of the fact that the other exceptions have not been argued, we will confine our consideration to the main question suggested.

## OPINION

The several grounds of the motion will now be considered.

1. That the land under the will of William Cave was vested in trustees for the benefit of John W. Bradley for life, remainder to such children as he left living, and that, under the partition proceedings to which the executors, as trustees, were parties, the decree of Chancellor Johnstone vested the title in John W. Bradley for life, remainder to his children, as stated.

The correctness of the appellants' position in this respect is not contested by the respondent.

2. That, as the plaintiffs and the defendant claimed from a common source of title, William Cave, and this Court.

upon the former appeal, decided that the deed of the Probate Court under which Julia R. Bradley claimed title, conveyed only the interest of John W. Bradley, which was a life estate, the title of the plaintiffs is paramount to that of the defendant.

This position of the appellants is likewise beyond controversy, subject, of course, to the contentions of the defendant as to adverse possession, presumption of a grant, and the Statute of Limitations.

3. That the plaintiffs, not having been made parties to the proceeding which resulted in the Inglis decree of 1861, which purported to vest the fee simple title in John W. Bradley, in violation of the terms of the will of William Cave and the decree of Chancellor Johnston in 1856, were not bound by that decree, which could not have the effect of divesting their estate in remainder.

In the opinion of Mr. Justice Watts upon this appeal he says :

"As to the question arising out of the construction of the decrees in the former appeal, the Court meant by the language used that the decrees were to be received in evidence for what they were worth, and in the new trial, if the defendant might succeed in some manner to connect the appellants with the decrees by any competent facts, circumstances, or testimony, then the matter should be submitted to the jury, but, if all that appeared upon the trial were the decrees, with no sufficient connecting links, then the general rule that the Court must construe the written instrument, would apply. In this case no connecting link was supplied, and on the motion for a directed verdict it was the duty of Judge Shipp to construe the decrees upon the face of the decrees themselves, and no other inference can be drawn than that the remaindermen were not parties to the Inglis proceeding, and in no manner bound thereby."

His interpretation of the former opinion is adopted, and, there being no evidence in the case tending to show that the

plaintiffs were made parties to that proceeding, the Circuit Judge would have been justified in sustaining the appellants' position, as above indicated, in this ground of the motion.

4. That Julia R. Bradley, when she purchased at the Probate sale, had knowledge that the land was trust property under the William Cave will; that she thereby stood in the shoes of the trustees, and, having thus become a *quasi* trustee of the remainderman, she could not plead adverse possession, or the presumption of a grant, or laches, or any doctrine that would deprive them of their legal rights as remaindermen.

It is evident that, when the partition proceedings of 1856 culminated in the decree of Chancellor Johnstone, there was an end of the trust created by the will in the executors in favor of John W. Bradley for life, with remainder to his children, and that from that time John W. Bradley held the legal title as a life estate with remainders as stated. The counsel for the appellants correctly state the effect of that proceeding in their motion for a directed verdict as follows:

"Under the will of William Cave, the executors had the right to partition the land, and they did it under the direction of the Court in the Job Johnstone decree, and, when that was done, as far as they were concerned, all authority as to who had the property in question was at an end."

Counsel confirm this position in their argument upon a rehearing of this appeal:

"The undisputed testimony shows that John W. Bradley went into possession four or five years before the Inglis decree, which was dated in 1861; that he went into possession about 1856, under the William Cave will, and under the Job Johnstone decree of 1856, which made him a life tenant with remainder over to his children."

If the trust was at an end, there was no longer any trustee into whose shoes Julia R. Bradley could be placed, and no objection can arise to the right of defendant to claim the protection of the defenses stated, so far as the holders of

the legal title are concerned; a matter not covered by this ground of the motion.

It will be observed that the appellants in their exception urge error in the refusal of their motion upon a ground not taken upon the motion. The motion was based upon the ground that Mrs. Bradley, at the time she purchased the land, had notice that the land was trust property under the Cave will. In their exception, while still relying upon this ground, they urge a ground, not entirely consistent with that ground, namely, that she knew that it was the property of her step-children. We have endeavored to show that she could not have known that it was at that time trust property, for the reason that the trust had been discharged by the partition proceedings of 1856, so admitted by the appellants. But, assuming that the appellants can now rely upon the added ground that she knew that the legal title was in the step-children and her own child, under the former decision of this case that necessarily raised a question of fact which the Circuit Judge could not have decided upon the motion to direct a verdict. The Court said:

"But there is testimony in the case that John W. Bradley, frequently asserted that he had only a life estate, and that his widow knew that, and should be charged with that notice when she purchased at Probate Court's sale."

The Court evidently did not intend to decide as matters of fact that this testimony was true, and that as a result she was charged with that notice, but that, if they were true, that conclusion followed. This view is strengthened by the further statement in the opinion that—

"All questions of * * * adverse possession * * * are disputed questions, and should be submitted to a jury."

Certainly these were questions of fact intimately affecting the question of adverse possession, and were properly submitted to the jury.

5. That when Julia R. Bradley purchased the land at Probate sale she occupied, as stepmother of the plaintiffs, a

*quasi* parental relation, and for that reason should not be allowed to claim the deed which she received as color of title, upon which to mount adverse possession or presumption of a grant, until and unless she gave, not ordinary notice of ouster, but unequivocal notice that she claimed under the probate title, which notice she failed to give.

2   The principle is just and well-established that, where one's possession was begun in privity with or in subservience to the title of another, a *quasi fiduciary* relation is established, and before a foundation can be laid for the operations of the Statute of Limitations or the defense of adverse possession by the acquisition of an outstanding title, a clear, positive, and continued disclaimer of the title under which he entered and the assertion of an adverse claim must be brought home to the other party. Until the trust is openly repudiated, the *cestui que* trust may rely upon the integrity of the trustee without endangering his right by lapse of time.

It will be noted that the very important element of knowledge on the part of Mrs. Bradley of the claims of the children is omitted in the statement of this particular ground. Clearly the ground is not tenable without this essential element. But, assuming that it included this element, the principle contended for cannot be invoked unless it appears that no other reasonable inference can be drawn from the evidence than that at the time Mrs. Bradley acquired the adverse title she occupied a position of privity with the children, or entered in subservience to their title.

Assuming, what has been decided, that the Inglis decree was invalid so far as transmuting John W. Bradley's life estate into a fee simple, when John W. Bradley died in 1875, his interest, a life estate, was extinguished; the fee simple title which was vested in the children by the Case will and the Johnstone decree became united with the right of possession in them, a clear, legal estate, in which Julia R. Bradley had no interest whatever; her possession after that

time was in no sense in privity with the children, but adverse. If she had had an interest as tenant in common with the children, as an heir-at-law of John W. Bradley, the case of *Hulvey v. Hulvey*, 92 Va., 182; 23 S. E., 233, would have been of great force.

We know of no authority, and none has been cited, deciding that the simple relation of a stepmother to her stepchildren creates a trust relation which prevents her from acquiring an interest in property adverse to them. Counsel for appellants apparently realizing that something more than the bare relation of the parties must appear, have attempted to sustain this ground by copious extracts from the evidence tending to show that John W. Bradley recognized his holding as a life estate only, and that Mrs. Bradley knew of it and acted upon that theory. However persuasive the evidence may be as to these matters, it still presented an issue for the jury. There was therefore no error on the part of the Circuit Judge in refusing the motion for a directed verdict in favor of the plaintiffs.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES FRASER and MARION concur.

MR. JUSTICE WATTS (dissenting) : This is a second appeal in this case. The first appeal is in 116 S. C., 7; 106 S. E., 843. The second trial was before his Honor, Judge Shipp, and a jury, at Allendale during September, 1921. At the last trial the appellants moved for a directed verdict, the effect of which would have been to declare the legal title to seven-eighths undivided interest in the property to be vested in the appellants and one-eighth interest in the respondent. This motion was refused, and a verdict rendered for the defendant. The grounds of motion for a directed verdict at the close of all the testimony were:

"Mr. D. S. Henderson: We submit to the Court and move the Court to direct a verdict in favor of the plaintiffs in this action for the undivided seven-eighths interest in the

tract of land in dispute, according to the rights among themselves under the Statute of Distributions, upon the following grounds and for the following reasons:

"(1) That it is unquestioned, and in fact admitted in the testimony in the case, that the land in question came under the will of Wm. Cave, and contained 153 acres, which was set apart in the decree of Job Johnstone, Chancellor, to which the executors of Wm. Cave were parties, to John W. Bradley for life, and at death to his children, it being recognized that John W. Bradley was a grandchild of Wm. Cave.

"(2) That it is unquestioned and settled by the evidence in the case that the defendant, Mrs. Calhoun, claimed from the same source of title as the plaintiff's, namely, from Wm. Cave, and that, according to the decision of the Supreme Court, the Probate Judge's deed to Julia R. Bradley, amounted to nothing, because it simply sold the interest of John W. Bradley, and, if John W. Bradley had nothing at the time, nothing was sold, and that, so far as the paper title is concerned in the case, it is unquestioned that the title of the plaintiffs is paramount to that of the defendant.

"(3) The defendant set up in the first place *res adjudicata* under the Job Johnstone and Inglis decrees, put in evidence, and claimed that under the Inglis decree a fee simple title to the land was vested in John W. Bradley, and we contend that the unquestioned evidence in the case, there being no presumptions at all, is that the children, some of them, at least, were in *esse,* and actually living on the land in question, and in reach of the Sheriff of Barnwell District, and were never made parties to that action, and that, if the Court please, if they had been made parties to the action, the Court had no power to change the trust qualities of the Wm. Cave will, and change it from a life estate to an absolute fee simple in John W. Bradley. That the

decree undertook, without having the parties before it, to change the trust, and, whilst the trust directed that the executors could partition, yet it said if they did not partition they could sell, but the proceeds must be reinvested upon similar trust, and what action was taken by the Inglis decree was a violation of that trust, and, under the decision of our Supreme Court, and the authorities upon which it is based, that action was void; not simply voidable, but void.

"(4) That on the *res adjudicata* question of the Probate title it has been settled by our Supreme Court in this particular case that the Probate Court had no power, authority, or jurisdiction, and, even if it had, did not undertake to sell anything else but the interest of John W. Bradley, and, if John W. Bradley only had a life estate, they sold nothing.

"(5) That, may it please your Honor, the inference that can be drawn from the testimony in this case is that Mrs. Julia R. Bradley, when she purchased at the Probate sale, purchased with the knowledge that the land she was purchasing was trust property under the Cave will, and that if she did not have the actual knowledge she had facts sufficient which, if followed up, would have given her that knowledge, that it was trust property, and I don't think there is any dispute on that, and that she stood in the shoes of the trust estate, and, being the *quasi trustee* of the remaindermen, she could not plead adverse possession against them, or the presumption of a grant, or laches, or any doctrine that would deprive them of their legal rights as remaindermen, no matter how long she stayed in possession.

"(6) We further take the position that, as Mrs. Julia R. Bradley was the stepmother of the children by the first marriage, she was in a *quasi* parental possession with these children when John W. Bradley died, and, standing in that attitude towards them, if she purchased an outstanding title

at the Probate sale, even if the title was good—and our Supreme Court has said it was not good—she could not claim adverse possession or the presumption of a grant, anything of that kind, until she gave them what it denominated in the books, not the ordinary notice of ouster, but unequivocal notice that she claimed under the Probate title.

"Now, the only other position that our friends take on adverse possession is that they are protected by the presumption of a grant as against the trustees of· William Cave's estate; that the fee to the land originally vested in Wm. Cave's executors, and that for 30 or 40 years they could have sued, and that consequently a title vested in John W. Bradley absolutely, and that John W. Bradley's title could be sold; but our answer to that is that, under the will of Wm. Cave, the executors had the right to partition the land, and that they did it under the direction of the Court of the Job Johnstone decree, ·and, when that was done, as far as they were concerned, all authority as to who had the property in question was at an end, and· no question of the Statute of Limitations or the presumption of a grant could arise."

The exceptions, three in number, complain of error on the part of his Honor. The practical question presented by the exceptions is whether or not the motion to direct a verdict should have been granted. The other questions raised by the exceptions are incidental thereto. In the former appeal it appeared that in neither the Johnstone decree in 1856 nor in the Inglis decree in 1861 are the defendants mentioned in any manner as parties. Hence the appellants claim that they were not bound thereby.

This Court in the former appeal, in passing on the question of whether or not the directed verdict in favor of defendant as directed by Judge Bowman should stand, ruled that the Inglis decree did not bind the appellants, because they were not parties thereto; ruled that this decree and the

accompanying records might be received in evidence for what they were worth, but the question should be submitted to the jury as to whether or not appellants' rights had been adjudicated thereby. In the same decision this Court held on the question of adverse possession:

"All questions of ouster, adverse possession," etc., "are disputed questions, and should be submitted to the jury."

As to the question arising out of the construction of the decrees in the former appeal, the Court meant by the language used that the decrees were to be received in evidence for what they were worth, and in the new trial, if the defendant might succeed in some manner to connect the appellants with the decrees by any competent facts, circumstances, or testimony, then the matter should be submitted to the jury, but if all that appeared upon the trial were the decrees, with no sufficient connecting links, then the general rule that the Court must construe the written instrument would apply. In this case no connecting link was supplied, and on the motion for a directed verdict it was the duty of Judge Shipp to construe the decrees upon the face of the decrees themselves, and no other inference can be drawn than that the remaindermen were not parties to the Inglis proceeding, and in no manner bound thereby.

Judge Shipp said on the motion for a directed verdict this:

"Now, unless Mr. Boulware shows me something to the contrary, I will properly instruct the jury on the matter of the judgments—that is, there can be no presumption that these people were parties."

We have no doubt that he so instructed the jury, and, if the jury found by their verdict that the appellants were parties to these decrees, there was no evidence to sustain their findings, and it was contrary to law as laid down by the Court.

As to the decrees, there was no evidence other than the decrees themselves to go to the jury as to whether the appellants were parties thereto, and his Honor, on the grounds made by Mr. Henderson in reference thereto, should have granted the motion.

Under the former appeal the Court said in reference to sale by the Probate Judge that Mrs. Bradley acquired only such title as her deceased husband had. Under the will of Cave he had only a life estate. An investigation of his title would have shown that under the whole record in this case, Mrs. Bradley acquired nothing. Her husband only had a life estate that terminated with his death. The whole proceeding in the Probate Court was a nullity, except possibly the question of title.

As to the nature of Mrs. Bradley's holding—whether she held permissively or as trustee of a constructive trust, or adversely, as contended by the respondent: There is no question but that this Court has held that a question of adverse possession and prescription need not of necessity be sent to a jury. The facts show that John W. Bradley, his children by his first wife, and his second wife and child used the property as a home after Bradley's death, and his widow purchased the property at Probate sale. She was in possession as widow, mother,, and stepmother of plaintiffs. The children have come and gone as they saw fit and proper. The Probate sale was a nullity. Mrs. Bradley only bought such title as her husband had. This Court has decided that. It turns out that he only had a life estate. Mrs. Bradley occupied the premises with her daughter, who was the youngest child of John W. Bradley, and a tenant in common with the plaintiffs. One tenant in common cannot hold adversely to the other tenants in common, unless under certain circustances, none of which, are made to appear in the present case, and it is absolutely without evidence to support a claim of adverse possession

by one tenant in common against the other tenants in common. Under the doctrine of *Sullivan v. Latimer,* 35 S. C., 422; 14 S. E., 933, as applied in the former appeal, in this case, it inevitably follows under the facts as developed in this case that Mrs. Bradley bought the land subject to the trust of her husband; the will of Wm. Cave on record shows that John W. Bradley only had a life estate, and held as trustee of his children. This fact not only put Mrs. Bradley on notice that she bought nothing, but was trustee of her children, and the other evidence in the case shows that Mrs. Bradley knew that her husband only had a life estate. She knew this other than from the will of Wm. Cave. John W. Bradley told her he had only a life estate. His Honor was in error in not directing a verdict in favor of the plaintiffs, as asked for, on all of the grounds, for seven-eighths of the property, and the questions of taxes, betterments, rents, and profits are left open.

Mr. Chief Justice Gary concurs.