### KIRTON *ET AL.* v. HOWARD *ET AL.* ·

#### (134 S. E., 859)

1. TRUSTS—DEED HELD TO CREATE TRUST IN REALTY WHICH CONTINUED AFTER TWO PROCEEDINGS IN EQUITY—ONE TO SELL TRUST PROPERTY, THE OTHER TO RELEASE PURCHASER FROM OBLIGATION.—Deed of realty to trustee for use and benefit of grantor's son and daughter for life, with provision for division and for conveyance of fee to their children, *held* to create trust which continued in force after two proceedings in equity—one for an absolute sale of the trust property, the other for a reconveyance and release of purchaser of his obligation. ,

2. TRUSTS—DUTY OF TRUSTEE TO CONVEY REALTY HELD SUCH AS TO PREVENT STATUTE OF USES FROM EXECUTING USE, EITHER AS TO LIFE ESTATE OR FEE.—Duty of trustee to convey realty for life to certain persons on their attaining their majority, and on their death to convey the fee to their children, *held* to prevent statute of uses from executing use either as to life estate or as to fee.

3. TRUSTS.—Equity has power to order sale of trust property and reinvestment of proceeds.

4. TRUSTS.—At common law, on death of trustee of realty, legal title passed to his heir, his eldest son.

5. EVIDENCE—ASSUMED AFTER LAPSE OF 60 YEARS THAT RECONVEYANCE BY TRUSTEE'S GRANTEE WAS MADE AS ORDERED.—Where trust property was sold for reinvestment of proceeds, and subsequently, pursuant to agreement, it was ordered that grantee reconvey to new trustee, it will be assumed after lapse of 60 years and in absence of evidence to contrary, that deed was executed and delivered.

6. TRUSTS—AGREEMENT AND ORDER OF COURT FOR RECONVEYANCE BY TRUSTEE'S GRANTEE HELD TO VEST TITLE IN NEW TRUSTEE IRRESPECTIVE OF ACTUAL CONVEYANCE (Civ. Code 1922, § 5458).—Where trust property was sold under order of Court for reinvestment of proceeds and mortgage was taken for part of price and subsequently it was agreed and ordered that the grantee should, in satisfaction of the mortgage, reconvey to new trustee theretofore appointed, upon the original trusts, the agreement made the grantee a trustee of the land, and Civ. Code 1922, § 5458, relative to appointment of new trustees, vested the title in the new trustee, even if no deed was executed.

7. TRUSTS.—Where trust funds are used to purchase property, title being taken in name of fiduciary or of third person, or vendor fails to make title, a resulting trust arises in favor of person entitled to trust funds so used.

8. E<span>VIDENCE</span>.—Courts will assume that the designated public officers performed duties required of them by Civ. Code 1922, § 5458, relating to substitution of trustees and indorsement of such fact on trust deed and recording of certificate thereof.

9. T<span>RUSTS</span>.—Under Civ. Code 1922, § 5458, relating to substitution of trustees, new trustee does not have to consent to act in order to make trust in him valid.

10. T<span>RUSTS</span>.—Statute of uses may operate to vest legal title in life tenant and leave legal title in remainder in trustee, or may vest legal title in remainder in remaindermen and leave legal title in life estate in trustee.

11. E<span>VIDENCE</span>.—Where land was divided between *cestui que* trust, who went into possession in accordance with trust deed, there was a presumption that trustee made the division as was his duty.

12. A<span>DVERSE</span> P<span>OSSESSION</span>.—Possession for 20 years will raise a presumption of a grant by a trustee to *cestui que* trust to whom trustee was by terms of trust to convey land for life.

13. L<span>IFE</span> E<span>STATES</span>.—Where life estate was freed and discharged from trust, one holding under life tenant could not hold adversely to trustee and remaindermen for whom he held title until death of life tenant.

14. V<span>ENDOR</span> <span>AND</span> P<span>URCHASER</span>.—One claiming to be innocent purchaser for value without notice must show an actual payment of purchase price and acquisition of legal title or best right to it before notice, and that he acted *bona fide* without notice.

15. V<span>ENDOR</span> <span>AND</span> P<span>URCHASER</span>.—Where trust deed directing trustee to convey life estates to grantor's son and daughter, and subsequent proceedings relating to trust were on record, daughter's grantee *held* put on inquiry as to rights of remaindermen.

16. V<span>ENDOR</span> <span>AND</span> P<span>URCHASER</span>.—One cannot successfully interpose defense of innocent purchaser for value if circumstances were such as to put him on inquiry or such that use of due diligence would have disclosed facts.

17. V<span>ENDOR</span> <span>AND</span> P<span>URCHASER</span>.—Purchaser of realty is charged with notice of every fact which inquiry and due diligence would certainly have disclosed.

18. V<span>ENDOR</span> <span>AND</span> P<span>URCHASER</span>.—Defense of *bona fide* purchaser for value without notice is purely equitable, and cannot be interposed as good defense against legal title.

19. A<span>PPEAL</span> <span>AND</span> E<span>RROR</span>—I<span>N</span> S<span>UIT</span> <span>TO</span> R<span>ECOVER</span> P<span>OSSESSION</span> <span>OF</span> R<span>EALTY</span>, O<span>BJECTION</span> <span>THAT</span> T<span>RUSTEE</span> H<span>OLDING</span> T<span>ITLE</span> <span>FOR</span> P<span>LAINTIFFS</span> <span>WAS</span> N<span>EC</span>-<span>ESSARY</span> P<span>ARTY</span> H<span>ELD</span> <span>TOO</span> L<span>ATE</span> <span>WHEN</span> F<span>IRST</span> M<span>ADE</span> <span>ON</span> A<span>PPEAL</span> (Code

Civ. Proc., 1922, §§ 401, 404, 405).—In action by remaindermen to recover possession of land from one claiming under life tenant, objection that trustee holding legal title for plaintiffs was necessary party, though good, *held* too late when first made on appeal, in view of Code Civ. Proc., 1922, §§ 401, 404, 405.

20. PARTIES.—Nonjoinder of a proper, as distinguished from a necessary, party is not ground for demurrer. .

21. PARTIES.—A "defect of parties" means too few and not too many parties, and is not synonymous with "misjoinder," which means excess of parties.

22. PARTIES.—If defect of parties appears on face of complaint, objection must be made by demurrer or it is waived.

23. PARTIES.—If defect of parties does not appear on face of complaint, objection must be taken by answer.

24. PARTIES.—Defect of parties is cured if objection is not taken by demurrer or in answer.

25. DISMISSAL AND NONSUIT.—Objection to defect of parties, not taken by demurrer or answer, cannot be urged on motion for nonsuit.

26. PARTIES.—Objection that plaintiff has not capacity to sue, not taken by demurrer or answer, cannot be urged under a general denial.

Before HENRY, J., Williamsburg, April, 1925. Reversed, and cause remanded for entry of judgment for plaintiffs.

Action by J. M. Kirton and others against D. C. Howard and others. Judgment on directed verdict for defendants, and plaintiffs appeal.

*Mr. Phillip H. Stoll,* for appellants, cites: *In construing deed Court to ascertain intention of grantor:* 46 S. C., 356. *Active trust:* 106 S. C., 245. *When interest of remainderman vests:* 106 S. C., 245. *Adverse possession does not run against one under legal disability:* 82 S. C., 534. *Trustee takes no larger estate than necessary to execute trust:* 82 S. C., 534; 29 S. C., 137; 8 S. C., 184. *Effect of Statute of Uses:* 52 S. C., 554; 1 Speers, 356. *Trustee not necessary to protect separate estate of marrried woman:* 85 S. C., 373. *Statute of Uses executes passive trust:* 121 S. E., 100; 106 S. C., 271; 71 S. C., 426; 18 S.C., 184.

*No adverse possession against remainderman during life estate:* 112 S. C., 183. *Bona fide purchaser:* 32 S. C., 451; 14 S. C., 319. *Occupant estopped to deny title under which he took possession:* 1 Strob. 1. *Equity will preserve a trust:* 1 Rich., Eq., 324. *Trust follows land into hands of purchaser:* 6 S. C., 159.

*Messrs. Kelly & Hinds* and *Lee & Shuler,* for respondents, cite: *Exception violating Rule 6 of Supreme Court:* 132 S. C., 335. *Active trust not executed by Statute of Uses:* 131 S. C., 166; 126 S. C., 180; 123 S. C., 385; 84 S. C., 464; 78 S. C., 148; 61 S. C., 249; 29 S. C., 165; 23 S. C., 291; 7 Rich., 81. *Adverse possession and Statute of Limiations runs against trustee holding legal title:* 126 S. C., 180; 121 S. C., 256; 85 S. C., 573; 78 S. C., 334; 78 S. C., 143; 50 S. C., 120. *Where trust only partly executed by Statute of Uses:* 106 S. C., 251; 84 S. C., 464; 82 S. C., 534; 81 S. C., 340; 51 S. C., 271. *Power of Court to direct sale trust property for reinvestment:* 121 S. E., 783; 117 S. C., 475; 115 S. C., 10; 115 S. C., 35; 112 S. C., 284; 101 S. C., 1. *Defendants were bona fide purchasers for value:* 99 S. C., 264; 86 S. C., 56. *Title passes by conveyance directed by decree to be made; not by decree:* Bailey Eq., 375; 21 C. J., 691. *Trustees or his heirs are necessary parties for recovery of real property passing under active trust:* 131 S. C., 166; 112 S. C., 284; 61 S. C., 243; 29 S. C., 135; 23 S. C., 291.

August 26, 1926.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The appellants, as plaintiffs, brought action in the Court of Court of Common Pleas of Williamsburg County for the recovery of the possession of a tract of land, situate in that County, containing 142 acres, more or less. The complaint is in the usual form of complaints for the recovery of real property. The defendant, D. C. Howard, claiming

to be the owner of the lands in dispute, in his answer, after alleging that he is in possession of the land and that he is seized in fee thereof, also pleaded, as shown in the "case," the following defenses: (1) The 10-year Statute of limitations. (2) Adverse possession. (3) The 20-year Statute. (4) The 40 years Statute (5) Purchaser for value without notice.

The defendant Federal Land Bank of Columbia in its answer alleged the first four defenses, stated above, of the defendant Howard, and as another defense set up that it was an innocent incumbrancer for value without notice. The defendant Rhem Real Estate Company, made default.

At the conclusion of all the testimony in the cause, the plaintiffs moved for a directed verdict in their favor, and, the defendants Howard and Federal Land Bank of Columbia made a similar motion for such verdict in their favor. The Presiding Judge, Hon. J. K. Henry, refused the motion of plaintiffs and granted that of the defendants.

From the refusal to grant their motion, and from the granting of the motion for the defendants, the plaintiffs have appealed to this Court.

The fact of the controversy, as brought out in the trial below, shown in the record before this Court, are these:

Robert T. B. Abrams, then owner of a tract of land in Williamsburg County, containing about 900 acres, known as "the Black River tract," on September 24, 1856, executed and delivered his deed of trust, conveying thereby said tract of land to William J. Cooper, as trustee, for the uses and purposes set forth in the deed, as follows:

"In trust and confidence, nevertheless, and for the following uses and purposes and for no other, that is to say, for the joint use and benefit of my said children Robert Abrams and Agnes T. Abrams and the survivors of them until they arrive at the age of twenty-one years and upon their arrival at the age of twenty-one years then in trust to divide the said land into two equal moieties and to assign and convey

one part or moiety thereof to the said Robert Abrams and to assign and convey the other part or moiety thereof to the said Agnes T. Abrams in such manner that each of my said children shall have, hold, use and enjoy, respectively the shares which may be allotted to them respectively during their respective natural lives and upon the death of either of my children then in trust to convey the said moiety or part of such child so dying to such child or children as such deceased child shall have living at his or her death and in case either of my said children shall die without leaving a child or children living at his or her death then in trust to convey the said moiety or part to the survivor of them and in case both shall die without leaving a child or children living then in trust to convey the said respectively to me, the said Robert T. B. Abrams, discharged from further trust."

The consideration of the deed was "the natural love and affection" which the grantor had for his children, Robert and Agnes, the latter having later married James M. Kirton. This deed was duly recorded in the office of the clerk for Williamsburg County November 25, 1856.

In the year 1862 the said Robert T. B. Abrams, the grantor in the said trust deed, filed his petition in the Court of equity for Williamsburg County, and alleged therein that, since the execution and delivery of the deed to Cooper, as trustee, the said Cooper had died; that the petitioner, Robert T. B. Abrams, and his two children, Robert and Agnes, had continued to live on the tract of land conveyed by the deed and had continued to use and cultivate the same; that one Joseph B. Allston desired to purchase the tract and offered therefor the sum of $6,000, if proper title thereto could be procured; that it was to the advantage of his children, Robert and Agnes, the *cestuis que trustents,* that the offer of Allston be accepted. The petitioner prayed that a new trustee be appointed, who should be given authority to invest the purchase money of the lands to be sold to

Allston, said money to be held by the said newly appointed trustee subject to the same trust and limitations expressed in the deed from himself to Cooper as trustee, hereinbefore referred to. The children, Robert and Agnes, and the heirs at law of Cooper, the deceased trustee, were properly made parties to this proceeding.

The cause in equity was referred to R. C. Logan, Esq., then commissioner in equity. He found the facts alleged in the petition to be true, and recommended the sale to Allston and the investment of the proceeds of sale as prayed for in the petition, and, he recommended the appointment of one James C. Sanders as trustee. Sanders consented to act in that capacity. Following the report of the commissioner, on December 22, 1862, Chancellor John A. Inglis, after a hearing of the cause, made his order, the pertinent portions of which are as follows:

"It is ordered that the said James C. Sanders be appointed trustee in the room and stead of the said William J. Cooper, deceased, under the trust deed of the said Robert T. B. Abrams, mentioned in the said petition in this case, upon his entering into a bond payable to the commissioner of this Court and his successors in office in the penal sum of $12,000, with two good sureties to be approved by said commissioner conditioned for the faithful discharge of his duties as such trustee, and making and recording the proper indorsement of the deed as required by law.

"It is further ordered that the commissioner of this Court do execute and deliver to the said Joseph B. Allston, his heirs, executors, or assigns, a title deed for the said tract of land in the said petition mentioned, conveying the interests of the respective parties therein to him, the said Joseph B. Allston, his heirs, executors, and administrators and assigns, upon the said Joseph B. Allston paying to him $2,000 with the interest which may be due thereon as stipulated in the argeement mentioned in the petition, and also entering into bond payable to the said commissioner in the penal sum

of $8,000 conditioned for the payment of $4,000 with the interest thereon as stipulated in the said agreement, and executing a mortgage of the land mentioned in the petition to secure the payment of the purchase money.

"It is further ordered that out of the cash portion of the purchase money, when received by him, the said commissioner pay the costs and expenses of these proceedings to be taxed and allowed by him, and that he pay over the balance of the cash, and assign over the bond and the mortgage of the said purchaser, to the said James C. Sanders, upon his complying with the terms of this order, to be by him invested in such manner as shall be hereafter directed by the order of this Court, but if upon the compliance of the said Allston the said Sanders shall not have consummated his appointment by filing an approved bond, that the commissioner do without delay invest the residue of the cash (after in that event paying thereout a reasonable fee to the Solicitor in this proceeding to be approved by the Court) in State or Confederate securities bearing interest of not less than 7 per centum."

On may 11, 1863, Logan, commissioner, executed and delivered to Allston a deed to said tract of land. On the same day Allston paid on the purchase price the sum of $2,000, and executed to the commissioner a mortgage of the premises to secure the payment of $4,000, balance of the purchase price. Allston failed to pay the balance of the purchase price, secured by his mortgage. Thereupon, an agreement was entered into by him, Robert T. B. Abrams, the trustor, Robert Abrams, and Agnes T. Kirton (née Abrams), to the effect that the sum of $2,000, paid on the purchase price by Allston, should be applied as rent for the lands during the period he had been in possession thereof; that the mortgage from Allston to the commissioner should be canceled; that Allston was to convey the land to Sanders, as trustee, upon the same trusts and limitations as contained in the original deed of trust from Robert T. B. Abrams to

William J. Cooper, trustee; and that the commissioner was to deliver to Allston his bond for the balance due on the purchase money and was to satisfy the purchase-money mortgage.

Carrying out the terms of this last-mentioned agreement, Chancellor Inglis, on November 13, 1865, passed the following order:

"It appearing to the satisfaction of the Court that under the former proceedings in this case the lands mentioned in trust deed of Robert T. B. Abrams, dated September 24, 1856, and which he conveyed thereby to W. J. Cooper in trust for the uses therein mentioned, were conveyed to Joseph B. Allston by the commissioner of this Court, and that the bond and mortgage, executed by the said Joseph B. Allston in conformity with the order of this Court made, remain still in the hands of the commissioner, upon which there is still due the sum of $4,000 with the interest thereon ($2,000 having been already paid by him and invested as directed by this Court) ; and it further appearing that the parties Robert Abrams and Agnes T., now the wife of James M. Kirton, have arrived each to the age of 21 years, and a treaty has been made between the said Robert T. B. Abrams, Robert Abrams, James M. Kirton, and Agnes T. his wife, and the said Joseph B. Allston, whereby the said Joseph B. Allston has agreed to reconvey to the said parties the tract of land purchased and release to them any interest in the said sum of $2,000 already paid by him and to regard the same as so much rent paid by him for the use of said lands during the time he has had the same in his possession, and the said Robert T. B. Abrams, Robert Abrams, James M. Kirton and Agnes T., his wife, have agreed, in consideration of such treaty to release the said Joseph B. Allston from further liability on the said bond and mortgage and to procure an order directing the commissioner of this Court to deliver up the said bond to the said Joseph B. Allston and to enter satisfaction of the mort-

gage given to secure the payment of the balance of the purchase money due on said bond; and it further appearing that it will be to the advantage of the parties ·that this treaty or agreement be carried into effect:

"It is therefore, on motion of Dozier & Porter, Solicitors for the petitioners, ordered that upon the said Joseph B. Allston making and executing titles for the said tract of land to James C. Sanders as trustee for the uses and purposes as contained in the original deed of Robert T. B. Abrams to the said W. J. Cooper, deceased, the commissioner of this Court do deliver to the said Joseph B. Allston the bond given by him for the purchase money of said tract of land, and also enter satisfaction upon the said mortgage.

"It is further ordered that the said James C. Sanders be appointed trustee in the room and stead of the said W. J. Cooper, deceased, under the said trust deed of the said Robert T. B. Abrams in this case, and that so much of the order of December 22, 1862, as requires him, the said James C. Sanders, to enter into bond in the penal sum of $12,000 conditioned for the faithful discharge of his duties as such trustee be rescinded, and that he, the said James C. Sanders, holds the lands in said deed mentioned for the uses and purposes in said deed mentioned.

"It is further ordered that the said Robert T. B. Abrams, Robert Abrams, and James M. Kirton and Agnes T., his wife, do pay the costs of the proceedings by which the agreement of the said Joseph B. Allston with them shall be carried out.

"All the parties in being who are interested in the subject matter of this order being of age and capable of consent and desiring the course here proposed, it is, upon this consideration ordered as asked, and the said Sanders will upon conveyance to him stand seized of the land subject in all respects to the same trusts and limitations, under which the said former trustee, W. J. Cooper, held under the original deed. The deed to be executed by Allston must express

the trusts on its face and be recorded by procurement of the trustee and at the expense of the *cestui que* trust."

It does not appear that the deed directed in the last-mentioned order of Chancellor Inglis was recorded, and in fact, there was no evidence on the trial of the cause of the execution and delivery of that deed. It seems, too, that the mortgage of Allston to the commissioner was never satisfied and canceled on the record.

Robert T. B. Abrams and his two children, Robert and Agnes, moved back on the tract of land described in the trust deed, and said tract of land was divided, it seems about 1868, between Robert and Agnes.

By her deed of January 17, 1881, the daughter, Agnes, joined by her husband, James M. Kirton, conveyed, by a general warranty deed, a tract of 142 acres of the land described in the trust deed to one W. B. Nelson; and this 142-acre tract is the one involved in the pending action. On November 29, 1883, Nelson conveyed this tract to R. H. Kellehan, by general warranty deed. Kellehan conveyed to Ned Miller and others, on December 31, 1891, taking from the grantees a purchase-money mortgage. In properer foreclosure proceedings, the mortgage of Miller and others to Kellehan was foreclosed in 1902, and thereunder the land was conveyed by the Sheriff of Williamsburg County to F. Rhem & Son, on January 9, 1903. Rhem & Son deeded the tract to Rhem Real Estate Company, on December 9, 1911, by general warranty deed. Rhem Real Estate Company, by general warranty deed, conveyed to Howard, one of the defendants, and a respondent·in the case at bar, on January 10, 1919. Howard, on February 6, 1923, mortgaged the tract of land to his codefendant, Federal Land Bank of Columbia, the premises being described in that mortgage as containing 147 acres.

Agnes T. Kirton (née Abrams) died on January 16, 1924, survived by her five children, S. J. Kirton, D. T. Kirton, Charlotte Kirton Heape, D. J. Kirton, and J. M.

Kirton. On March 27, 1924, D. J. Kirton conveyed to J. S. Smith his interest in his mother's portion of the Robert T. B. Abrams lands. On March 28, 1914, D. T. Kirton conveyed his interest in those lands to J. M. Kirton. On April 8, 1924, S. J. Kirton likewise conveyed his interest to J. M. Kirton. So J. M. Kirton (son, and not husband, of Agnes), Mrs. Heape, and Smith, claiming under the trust deed, are the plaintiff-appellants in the litigation.

After hearing arguments in favor of the respective motions for directed verdict, the trial Judge in directing a verdict for the defendants announced his reasons therefor as follows:

"I was surprised to find that the Supreme Court had held that the Statute begins to run against the trustee as well as the life tenant, and continues to run, and the proof being that these parties have been in possession against the claim of the plaintiffs here for more than 20 years, it necessarily follows that they are entitled to it by possession. That is the only logical conclusion, unless it should turn out that my first proposition is wrong. But as I understand, that is what the Supreme Court holds, and I don't see how I can resist the conclusion that the defendant is entitled to recover, and I will have to direct a verdict. And on the further ground that I don't think these parties here—that Howard—people claiming from him, I think they are innocent purchasers without notice. Upon these two grounds I will have to direct a verdict for the defendant. That is the way it appears to me, and I was somewhat convinced of that against my own judgment at first. I may be wrong about it now, and hope you will take it to the Supreme Court."

There are several exceptions on part of the plaintiffs-appellants. The attorneys for the respondents gave proper notice that this Court would be asked to sustain the directed verdict in their favor upon three additional grounds. We shall not take up the exceptions or the sustaining grounds

seriatim.   We refer to such as we think necessary for a determination of the cause, as we proceed.

As seen by this Court, there is before us at the outset the following injuiries:

(1) Did the use or trust, raised by the trust deed of 1856, continue after the final order of Chancellor Inglis in 1865, on the same terms and limtiations as expressed in that instrument?

(2) Did the Circuit Judge err in directing a verdict for the defendants on the ground of adverse possession?

(3) Was there error in directing a verdict for the defendants on the ground of innocent purchaser for value without notice?

(4) Was there error in refusing the motion of plaintiffs-appellants for a directed verdict in their favor?

Turning first to the trust deed of 1856, we are of the opinion that this instrument raised a use.   We think the language clear and unambiguous.   Therein the grantee was given to beneficial interest withever. The land was conveyed to him and his heirs forever, "in trust and confidence nevertheless, and for the following uses and purposes and for no other," and then setting forth the uses and purposes, already herein quoted, from the deed.   Manifestly, the trustor had no intention that the two children should have fee-simple estates in the parts of the land intended for their use and benefit.   Had there been such intention on his part, is it not reasonable to suppose that he would have conveyed the lands directly to the children in fee simple, or that he, at least, would have directed the trustee to so convey it to the children upon their attaining the age of 21 years?

It is apparent, then, that the trustor had in his mind certain definite objects, which he desired to have carried out, namely: First, that the lands should be held by the trustee undivided until the children arrived at 21 years of age, for their joint use and benefit; second, that up-

on their attaining their majority, the trustee was to divide
the land into two parts, and to convey one part to Robert
and the other part to Agnes, in such manner that each of
them should "have, hold, use, and enjoy" the same during
their respective natural lives; third, upon the death of either
of the two children without leaving a surviving child or
children, the trustee was directed to convey the moiety of
the dying child to his or her survivor; fourth, upon the
death of both of the children without child or children
surviving, the trustee was to convey the land back to the
trustor.   Thus, it is evident that the trustee was directed
to convey only life estates to the children of the trustor,
for he was to convey to each of them a moiety in such
manner that each of them should "have, hold, and enjoy"
such moiety during his or her natural life.   Likewise, it
must be equally clear that the trustor intended for the child
or children living at the death of the respective life ten-
ants to take fee-simple estates in the moieties held by such
life tenants, for the trustee was not directed to convey to the
survivor, or the trustor himself except in the event of the
death of such life tenant without leaving child or children
surviving.   The trust was to continue until the fee vested
either in the child or children of the life tenants, or again
in the trustor.   This duty on the part of the trustee to convey
conferred upon him active duties, which prevented the
statute of uses from executing the use, for to enable him
to convey at the times and to the persons or classes of per-
sons designated in the deed, it was necessary for the legal
title to remain in him.   *Moyle v. Campbell,* 126 S. C., 180;
119 S. E., 186. *Spann v. Carson,* 123 S. C., 371; 116 S. E.,
427.   *Dumas v. Carroll,* 112 S. C., 284; 99 S. E., 801.
*Steele v. Smith,* 84 S. C., 464; 66 S. E., 200; 29 L. R. A.
(N. S.), 939. *Young v. McNeill,* 78 S. C., 143; 59 S. E.,
986. *Holmes v. Pickett,* 51 S. C., 271; 29 S. E., 82.   *Ayer
v. Ritter,* 29 S. C., 135; 7 S. E., 53.   *Huckabee v. Newton,*

23 S. C., 291. *McCaw v. Galbraith,* 7 Rich., (41 S. C. L.), 74.

It is so generally conceded that the Court of equity has power to order the sale of trust property and reinvest the funds that it is not even necessary to point to authority for that proposition.

We are of the opinion that the proceedings in the Court of equity, which resulted in the two orders of Chancellor Inglis, one in 1862, and the other in 1865, did not destroy the trust.

Upon the death of the first trustee, Cooper, the legal title to the land passed to his heir, that is, to his eldest son, at the common law. *Martin v. Price,* 2 Rich., Eq., (19 S. C., Eq.), 412. *Cone v. Cone,* 61 S. C., 522; 39 S. E., 748. *Breeden v. Moore,* 82 S. C., 534; 64 S. E., 604.

It appears that all the heirs at law of Cooper, the deceased trustee, under the statute of distributions, were made parties to the proceedings to sell the land, as well as the trustor and his two children named in the trust deed. Under Chancellor Inglis' order, the one of December 22, 1862, a new trustee, Sanders, was appointed, and this appointment was ratified in the second order. It seems to us to be unnecessary to determine whether the legal title to the lands passed to the new trustee, or that the title remained in the heir at law of the old trustee up to the time of the sale by the commissioner to Allston. By the same order, the commissioner was directed to sell the land to Allston; and, upon compliance with the terms of that order, and upon the execution and delivery of the deed from the commissioner to Allston, we think there can be no doubt that the legal title to the land then and there vested in Allston.

Nor can there be doubt, it appears to us, that the full purpose and intention of the second proceedings in equity was to have Allston relieved from liability on his bond and mortgage to the commissioner, to have him divested of any

title in the lands, and to again subject these lands to the terms, trusts, and limitations as contained in the original trust deed. The order of the Chancellor of November 13, 1865, expressly directed the commissioner to deliver to Allston the bond he had formerly given, for the purchase money, and to enter satisfaction upon his mortgage, which secured the payment of that bond, upon execution by Allston of his deed to the new trustee, Sanders. This order definitely provided that Sanders was to "hold the lands in said deed mentioned for the uses and purposes in said deed mentioned."

True, the record substantiates the claim that there is no evidence showing that the deed which Allston was required to execute was ever recorded; indeed, there is no evidence that such deed was ever executed. Attention is also called to the fact that the Allston mortgage was not canceled on the record thereof. On the other hand, is it not equally true that there is no evidence that the deed was not executed by Alston to the trustee, Sanders, or, that the original mortgage of Allston was not satisfied by the commissioner? Granting that there is no record of the deed from Allston to Sanders, it does not necessarily follow that no such deed was executed and delivered. Nor does it follow that the original mortgage was not satisfied, merely because the record thereof was not canceled. Many deeds that have been duly executed and delivered in this State have never been entered of record. Numerous mortgages have been satisfied, but the record of the mortgages does not disclose such satisfaction. The only consideration for the deed from Allston to Sanders was the release of Allston form further liability on his bond and mortgage. Was he so released? Most assuredly, all the parties interested in the proceedings, as well as the commissioner, regarded him as fully released from that liability. No effort was made thereafter by the commissioner, or by any of the beneficiaries, so far as the record discloses, to hold Allston liable thereon. All the parties seemed to regard him as released

from liability on his bond and mortgage, and divested entire-
ly of all interest in the lands. These conclusions seems to
us to be completely established from the evidence in the
cause, which showed that Allston immediately moved away
and surrendered the possession of the land to Robert T. B.
Abrams and his two children, who then moved upon and
took possession of the same. In the absence of evidence to
the effect that the deed was not executed and delivered by
Allston, as he was required to do, the Court must assume,
after the lapse of more than 60 years, that such deed was
both executed and delivered in the form and manner as
required in the order of Chancellor Inglis.

But if it had been fully established that the deed
from Allston to Sanders, the new trustee, was not
executed and delivered, still there are valid reasons
for holding that the title passed from Allston to the new
trustee, and it would be proper for the Court to so assume.
Clearly, it was the intention of the parties to the agreement
to restore the *status quo ante,* and all the parties *in esse,*
interested in the subject-matter of the agreement, were
parties thereto. The desire of Allston to be released from
further liability on his bond and mortgage is evident, and
that was good consideration for the agreement on his part.
Cooper, the old trustee, being dead, the beneficiaries, under
the original trust deed, desired a new trustee to be appointed,
and that with the expressed wish that the new trustee should
stand in the shoes of the original trustee. The parties called
upon the Court of equity to confirm the agreement they
had made and to appoint a new trustee, which the Court did.
The practical effect of this arrangement was the sale of the
land to the beneficiaries under the original trust deed for
a price equivalent to the balance of the principal due on
Allston's bond and mortgage, plus the accrued interest there-
on. In other words, Allston sold the land to these benefi-
ciaries and they paid for it with the trust funds, just as
effectually as if Allston had paid the balance due on his bond

and mortgage, and immediately thereafter the identical funds had been deliverd back to him in payment of the purchase price of the land. Where trust funds are used in the purchase of property and title is taken in name of the fiduciary, or in the name of a third person, or the vendor fails to make title, a resulting trust immediately arises in that property in favor of the person or persons entitled to the funds with which the property is purchased. 39 Cyc., 146-149. *Green v. Green,* 56 S. C., 193; 34 S. E., 249; 46 L. R. A., 525. *Palmetto Lumber Co. v. Risley,* 25 S. C., 309. *Walker v. Taylor,* 104 S. C., 1; 88 S. E., 300. *Sparks v. McCraw,* 112 S. C., 519; 100 S. E., 161.

The result of their arrangement was to constitute Allston a trustee of the lands for the uses and purposes set out in the original trust deed. The main purpose of the order of the Court, in which those proceedings resulted, was to confirm the agreement and to appoint a new trustee. Under the practice in England, which practice was supposed to have been followed in this County for many years, when there was a change of trustees, there was usually a formal conveyance from the old to the new trustee. In this country, however, for many years, there has been no necessity for a formal conveyance from the old to the new trustee, but title passed to the new trustee by virtue of his appointment. 39 Cyc., 286. In 1796, the General Assembly of this State (Faust's Laws 1795-1804, p. 96), for reasons stated in the preamble of the act, as follows: "Whereas, doubts exist whether the Court of equity have power to permit trustees to resign their trusts, with the consent of the parties entitled to the use of the trust estate, and to substitute other persons to support the trust"—enacted legislation touching those subjects, which appears to have been in full force continuously since the time of the enactment, and which is now found in Volume 3 of our Code of 1922, as Section 5458. This Statute is as follows:

"In every case of trust estate where the person or persons

entitled to the use of any property or estate vested in trustees, being of age, or his, her, or their guardian, if under age, may be willing to have other trustees substituted in the room of those in whom the legal estate is vested, or to have any one or more trustees substituted in the room of any one or more of the first or former trustees, the Court of Common Pleas is authorized to permit such one or more of the first or former trustees to surrender his, her, or their trust, and to appoint such one or more trustees in his, her, or their room, as to the said Court may appear fit, proper, and advisable; *and the trustee or trustees so appointed and substituted shall then be considered, to all intents and purposes, as vested completely and absolutely with all the estate, right title, interest, powers, privileges, and authority, and as liable to all the conditions, terms, and restrictions as that trustee or those trustees were vested with or liable to, in whose stead, room, or place, he, she, or they may be so appointed or substituted* [italics ours] ; and the first or former trustee or trustees shall be therefrom completely exonerated and discharged: *Provided, always,* that a certificate of such appointment and substitution shall be indorsed by the clerk of the Court of Common Pleas upon the original trust deed, if the trust be created by deed, and the deed can be found, and that such a certificate shall be annexed to the original will, if the trust be created by will, and be lodged therewith in the office where the will may be lodged; and that such a certificate shall also be recorded in the office where the deed or will may be recorded or lodged, or ought to be recorded or lodged."

It has been decided by this Court that where the procedure referred to in the act quoted, is followed, that no conveyance is necessary from the old to the new trustee, but title is transferred by the act itself. *McNish v. Guerard,* 4 Strob. Eq., (23 S. C., Eq.), 66. *Sullivan v. Latimer,* 35 S. C., 422; 14 S. E., 933.

While the "case" fails to show that the certificate of appointment of the new trustee, Sanders, was indorsed upon the original deed, if said deed was found, or that such appointment was recorded in the office of the clerk of Court, as required in the Statute, to which we have called attention, yet in the absence of any evidence to the contrary, the Court is bound to assume that the designated public officers performed the duties required of them by the act. *Rice v. Bamberg,* 72 S. C., 384; 51 S. E., 987. *Woody v. Dean,* 24 S. C., 499. *Douglass v. Owens,* 5 Rich., (39 S. C. L.), 534. *Riley v. Gaines,* 14 S. C., 454. *Nicholison v. Villepegue,* 91 S. C., 231; 74 S. E., 506. *Whitcomb v. Manderville,* 90 S. C., 384; 73 S. E., 775.

Furthermore, it has been held the new trustee did not have to consent to act in order to make the trust in him valid. *Cloud v. Calhoun,* 10 Rich., Eq., (31 S. C., Eq.), 358. *Withers v. Jenkins,* 6 S. C., 122. *Gregory v. Rhoden,* 24 S. C., 91.

We are forced then to conclude that even though no deed was executed which formally conveyed the lands from Allston to Sanders, the new trustee, the agreement between Allston and the beneficiaries, under the original trust deed, upon its confirmation by the Court, constituted Allston a trustee of the lands for the uses and purposes set forth in the trust deed, and that upon the appointment by the Court of a new trustee, who should hold the lands upon the same trust and limitations, the Statute referred to operated to vest Sanders, the new trustee, "with all the estate, right, title, interest, powers, privileges, and authority" as Allston was "vested with," and that Allston was discharged from such trust and divested of "all estates, right, title, interest, powers privileges, and authority" in all or part of said lands.

For the reasons indicated, we cannot agree with the positions taken by the respondents that the directed verdict in their favor should be sustained on their first and second

grounds, which were not given as reasons by the trial Judge at the time he directed the verdict. The first of these positions is, that the commissioner in equity, having conveyed the lands to Allston, discharged from the trust that the legal title and the fee became vested in Allston, and there is no deed in evidence from Allston to the plaintiffs, or to any one through whom the plaintiffs claimed. The second position is, that the order of Chancellor Inglis, of November 13, 1865, did not, and could not, have the effect of reviving the trust contained in the original trust deed from Abrams to Cooper, in that such order provided that a deed must be executed from Allston to Sanders, as trustee, which deed was to express the trust on its face and be recorded, and there was nothing to show that these requirements of the order were performed.

Being of the opinion that the trust continued, as the result of the second order of Chancellor Inglis, passed in 1865, on the same terms and limitations, expressed in the original trust deed, and having the further view that the legal title passed from Allston to Sanders, the new trustee, we direct our attention to the suggestion of error on the part of the trial Judge in directing a verdict for the defendants on their defense of adverse possession. To our mind, it differs not, in so far as the results here are concerned, whether the Statute of Uses executed the use or not. If it executed the use, both as to the life tenants and the remaindermen, then it operated to vest the legal title in the children of the trustor in the moieties respectively assigned to them during their respective lives, and the legal title in remainder in the children of the respective life tenants in their respective moieties. If such happened, the Statute of Limitations would not commence to run against the remaindermen until the "falling in" of the life estates. But respondents contend, as we understand it, that the legal title to both the life estate and the remainder remained in the trustee, and that such Statute did run against the trustee.

It seems well settled in this State that the Statute of uses may operate so as to vest the legal title in the life tenant and leave the legal title in remainder in the trustee, or, that it may vest the legal title in remainder in the remainderman and leave the legal title in the life estate in the trustee, according as it may be determined whether the trustee has any active duty to perform with respect to either rendering it necessary that the legal title to the life estate or the fee should remain in th trustee. *Steele v. Smith,* 84 S. C., 464; 66 S. E., 200; 29 L. R. A. (N. S.), 939. *Young v. McNeill,* 78 S. C., 143; 59 S. E., 986. *Breeden v. M̶oore,* 82 S. C., 534; 64 S. E., 604. *Williman v. Holmes,* 4 Rich., Eq., (25 S. C. Eq.), 475. *Wieters v. Timmons,* 25 S. C., 488; 1 S. E., 1.

We think, however, that the duty of the trustee to convey prevented the Statute from executing the use, either as to the life estate or as to the remainder. Sanders, as trustee, held the legal title in trust for the same uses and purposes as the trustee, Cooper, would have held it, had he then been living and no sale of the trust property been had. It was his duty, as clearly set forth in the original deed, and in the order of the Court, restoring the trust thereof, to convey a moiety of the lands to Robert Abrams and the other moiety to Agnes Kirton, in such manner that each should "have, hold, use, and enjoy" the same "during their respective natural lives." True, it does not affirmatively appear that he performed his duty. But it does appear that a division was made and that Robert and Agnes went into possession of the parts of the land assigned to them. The presumption is that the trustee, whose duty it was to divide the land, made that divisions, or, at least, that it was as made with his consent. Apparently, the division as made must have been satisfactory to the trustee and the two children. After the lapse of some 60 years, it must be assumed that the trustee also conveyed the moieties to Robert and Agnes for it is settled beyond question in this State that after 20

years a grant will be presumed. *Riddlehoover v. Kinard,* 1 Hill Eq., (10 S. C. Eq.), 376. *McLeod v. Rogers,* 2 Rich., (31 S. C. L.), 19. *Corbett v. Fogle,* 72 S. C., 312; 51 S. E., 884. *Powers v. Smith,* 80 S. C., 110; 61 S. E., 222. *Lewis v. Pope,* 86 S. C., 285; 68 S. E., 680. *Young v. McNeill,* 78 S. C., 143; 59 S. E., 986. *Miller v. Cramer,* 48 S. C., 282; 26 S. E., 657. *Shubrick v. Adams,* 20 S. C., 49. *Colburn v. Holland,* 14 Rich. Eq., (35 S. C., Eq.), 176. *Massey v. Adams,* 3 S. C., 254. *Wherry v. McCammon,* 12 Rich., Eq., (33 S. C., Eq.), 338; 91 Am. Dec., 240. *Myers v. O'Hanlon,* 12 Rich., Eq., (33 S. C. Eq.), 208. *Godfrey v. Schmidt,* Cheves Eq., (12 S. C. Eq.), 57.

In any view which we take of the case, we think it is certain that Robert and Agnes were clothed with the legal as well as the equitable life estate in their respective moieties. But the legal title in the remainder in each of the moieties remained in the trustee, to enable him to convey at the proper times to the person or persons or class of persons mentioned in the deed.

We are impelled to hold that there was error in the holding of the presiding Judge that the defendants were entitled to a directed verdict on the ground of adverse possession. We have two reasons for this view: The first is that Howard, and those through whom he claimed, could not hold adversely against the remaindermen, or their trustee, until the determination of the life estate of Mrs. Kirton. The second reason is, because there was no evidence of that adverse possession which our law recognizes.

If Mrs. Kirton held a life estate, freed and discharged from the trust, no one holding under her could hold adversely against the trustee or the remaindermen for whom he held the legal title, for the reason that Mrs. Kirton had the right to convey the lands for her life, and neither the trustee nor the remaindermen could have had any right of action for the possession until the death of Mrs. Kirton. *Mosely v. Hankinson,* 25 S. C., 519; *Rawls*

*v. Johns,* 54 S. C., 394; 32 S. E., 451, *Rice v. Bamberg,* 59 S. C., 498; 38 S. E., 209. *Mitchell v. Cleveland,* 76 S. C., 432; 57 S. E., 33. *Breeden v. Moore,* 82 S. C., 534; 64 S. E., 604.

If the legal title to the life estate was in Mrs. Kirton, and we have so held, the case of *Breeden v. Moore, supra,* seems to us to be absolutely controlling as to the question of adverse possession. In that case, Thomas Stubbs, Sr., devised certain lands to one Liles, "in trust to permit my daughter Lucy Ann Goodwin to use, occupy and enjoy the same during her natural life and after her death to convey the same to the heirs of her body, to them and their heirs forever, should she die leaving no such heirs then the said trustee to divide the same equally among my surviving children, the issue of any deceased child, taking the share of any of my children who may then be dead." The proof was that Mrs. Goodwin went into possession in 1856, and held it until 1881, when she conveyed to one Moore. Mrs. Goodwin died in 1898 without ever having any issue of her body. Shortly after her death, the heirs of the children of Thomas Stubbs, Sr., the grantor in the deed of trust, who survived him, brought suit for partition, making Moore, the grantee of Mrs. Goodwin, and the eldest son of Liles, parties to the suit. This Court held, under the authority of *Howard v. Henderson,* 18 S. C., 184, that the Statute of Uses executed the use as to the life estate and vested the legal title in Mrs. Goodwin for life, discharged from the trust, and that no one holding under her could properly set up adverse possession against the trustee or the remaindermen for whom the trustee held. In that case, Associate Justice Woods, who delivered the opinion, used this language:

"But even if it be assumed the trustee retained the legal title of the life estate of Mrs. Goodwin, the result would be the same. In *Benbow v. Levi,* 50 S. C., 120; 27 S. E., 655, it was held in accordance with a rule of general acceptation, that if the legal title is in the trustee, the *cestui que* trust

may be defeated by possession adverse to the trustee; but that case went no further than to hold that a *cestui que* trust would be barred by such adverse possession when her right to. possession might have been asserted by the trustee, during the period of the adverse holding. Even if the case of *Young v. McNeill,* 78 S. C., 143; 59 S. E., 986, be considered to extend the principle of *Benbow v. Levi* to the rule that a *cestui que* trust in remainder will be barred by an adverse holding against the trustee during the time that he might have asserted the life tenant's right of possession and before the accrual of the right of the remaindermen to possession, still this case does not fall within the rule; for the reason that there was no evidence whatever of adverse possession against the trustee or the remaindermen. Mrs Goodwin had the right 'to use, occupy and enjoy' the land during her life. This right, whether legal or equitable, she could convey or assign to another, and the trustee had no right to interfere. * * * Under this conveyance or assignment, her grantees or assignees had the right 'to use, occupy and enjoy' the land during Mrs. Goodwin's life without interference from the trustee. There is not a particle of evidence that they did anything to bring home to the trustee's notice that they claimed to hold the land by any higher claim than Mrs. Goodwin could and did confer."

In this cause, Mrs. Kirton, after having arrived at the age of 21 years, had the right to "have, hold, use and enjoy" her moiety of the land—but for her life only. Too, she had the right to convey and assign her right, legal or equitable, to another. But the person to whom she conveyed or assigned her right took, under her conveyance or assignment, no higher title than Mrs. Kirton enjoyed. Her grantee or assignee took the land she conveyed from her subject to the trust in favor of the remaindermen. *Smith v. Daniel,* 2 McCord Eq., (7 S. C., Eq.), 143; 16 Am. Dec., 641. *Sullivan v. Latimer,* 35 S. C., 422; 14 S. E., 933. We find in the

record no evidence whatever that the grantee of Mrs. Kirton, or those holding under her, did anything to bring home to the trustee notice of any claim to the land by any higher claim than Mrs. Kirton could and did confer.

The case of *Moyle v. Campbell,* 126 S. C., 180.; 119 S. E., 186, so strongly relied upon by the respondents, is distinguished from that of *Breeden v. Moore,* 82 S. C., 534; 64 S. E., 604, upon which appellants seem to base their position, on the ground that in the latter case it was held that the legal title was in the life tenant, while in the former case it was decided that the life beneficiary did not hold the legal title.

Next, let us inquire if there was error in directing a verdict for the defendants on the ground of innocent purchaser for value without notice. To entitle one to take advantage of the plea that he is a purchaser for value without notice, it is necessary for him to show three things: (1) That the purchase money was actually paid before notice of outstanding incumbrances or equities (giving security for the payment is not sufficient, nor is past indebtedness a sufficient consideration); (2) that he has purchased and acquired the legal title, or the best right to it, before notice of outstanding incumbrances or equities; and (3) that he purchased *bona fide* without notice. *Black v. Childs,* 14 S. C., 312. *Dearman v. Trimmier,* 26 S. C., 506; 2 S. E., 501. *Haynsworth v. Bischoff,* 6 S. C., 159. *Lynch v. Hancock,* 14 S. C., 66. *Bush v. Bush,* 3 Strob. Eq., (22 S. C. Eq.), 131; 51 Am. Dec., 675. *Zorn v. Railway Company,* 5 S. C., 90. *Williams v. Hollingsworth,* 1 Strob. Eq., (20 S. C. Eq.), 103; 47 Am. Dec., 527. *Summers v. Brice,* 36 S. C., 204; 15 S. E., 374. *Ellis v. Woods,* 9 Rich. Eq., (30 S. C. Eq.), 19. *Dillard v. Crocker,* Speers Eq., (17 S. C. Eq.), 20. The affirmative of all these propositions does not appear to have been shown on the trial below. One cannot successfully interpose this defense, where the circumstances are sufficient to put one upon in-

quiry, or where one might by due diligence have ascertained the facts. One is charged with notice of every fact which such inquiry and such diligence will certainly disclose. *Black v. Childs, supra; Dillard v. Crocker, supra; Maybin v. Kirby,* 4 Rich. Eq., (25 S. C., Eq.), 105. Mrs. Kirton had no deed that conveyed to her a fee-simple estate, nor had she been in possession of the land for a sufficient period of time to give rise to a presumptive grant. She lived on one part of the land that formerly belonged to her father, and her brother, Robert, lived on the other part. Her father's trust deed to Cooper was of record in the County in which the land was situated. The proceedings in the Court, which confirmed the agreement between the *cestuis que trustents* under the original trust deed and Allston for a reconveyance of the lands from Allston to Sanders, the new trustee, who was to hold the lands upon the same terms and limitations as expressed in the original trust deed, were all matters of record in the office of the clerk of Court for Williamsburg County. We cannot resist the conclusion that these facts and circumstances were sufficient to put the defendant Howard and those claiming under him upon inquiry which, if pursued with due diligence, would have led to knowledge of the rights of the plaintiffs-appellants. While the plaintiffs-appellants did not have the formal paper title, they had the best right to that title. Again, it has been said:

"It is well settled in this State that the plea of *bona fide* purchaser for valuable consideration without notice is purely equitable, and cannot be interposed as a good defense against the legal title." *Sweatman v. Edmunds,* 28 S. C., 58; 5 S. E., 165.

We think the exceptions of the appellants, which assign error in directing a verdict on the ground of purchaser for value without notice should be sustained.

The respondents insist that the verdict in their favor should be sustained, nevertheless, for the reason that the legal title to the disputed lands being in the trustee

that he is necessary party to this action, and that the plaintiffs cannot recover until that legal title in remainder has been conveyed to them by the trustee, which it does not appear has been done. We think this contention comes too late. Cyclopedia of Law and Procedure is authority for this statement:

"Under the codes and practice acts, a 'defect parties' is expressly enumerated as a ground of demurrer, and such provisions apply equally well to a defect of parties plaintiff, as well as a defect of parties defendant. But nonjoinder of a proper, as distinguished from a necessary party is not ground for demurrer. A 'defect of parties' means too few and not too many parties, and hence is not synonymous with misjoinder of parties which means an excess of parties." 31 Cyc., 293.

Our Code provides that the defendant may demur to the complaint when it shall appear upon the face thereof that there is a defect of parties, plaintiff or defendant. Volume 1, Code 1922 § 401. In Section 404 of the same Volume, there is a provision that when it does not appear on the face of the complaint that there is a defect of parties, the objection may be taken by answer. And Section 405, of the same Volume, provides that if no such objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the objection.

This Court has held repeatedly, in construing said sections that if it appear on the face of the complaint that there is a defect of parties, objection must be made by demurrer, and is waived upon failure to demur. *Featherston v. Norris,* 7 S. C., 472. *Evans v. McLucas,* 12 S. C., 56. *Daniels v. Moses,* 12 S. C., 130. *Ross v. Linder,* 12 S. C., 592. *Shull v. Caughman,* 54 S. C., 203; 32 S. E., 301. *Allen v. Cooley,* 53 S. C., 77; 30 S. E., 721. And it has been held that if the defect does not appear on the face of the complaint the objection must be taken by answer. *Featherston v. Norris, supra; Evans v. McLucas,*

*supra; Daniels v. Moses, supra; Patterson v. Pagan,* 18 S. C., 584. *Kiddell v. Bristow,* 67 S. C., 175; 45 S. E., 174. *Duncan v. Duncan,* 93 S. C., 487; 76 S. E., 1099. *Ross v. Linder supra.* Further, the defect is cured if objection is not taken by way of demurrer or in the answer. *Bowden v. Winsmith,* 11 S. C., 409. *Daniels v. Moses, supra; Jackins v. Dickinson,* 39 S. C., 436; 17 S. E., 996. *Ross v. Jones,* 47 S. C., 211; 25 S. E., 59. *Dawkins v. Mathis,* 47 S. C., 64; 24 S. E., 990. *Smith v. Smith,* 50 S. C., 54; 27 S. E., 545. Too, if objection is not taken by way of demurrer or answer, such objection cannot be urged upon motion for nonsuit. *Delleney v. Granite Co.,* 72 S. C., 39; 51 S. E., 531. *Shull v. Caughman,* 54 S. C., 203; 32 S. E., 301. *Blackwell v. Mortgage Co.,* 65 S. C., 105; 43 S. E., 395.

It has also been determined that where objection is not taken by demurrer or answer "that the plaintiff has not legal capacity to sue," such objection cannot be taken advantage of under a general denial. *Blackwell v. Mortgage Co., supra; Commercial Co. v. Turner* 8 S. C., 107. *Palmetto Co. v. Risley,* 25 S. C., 309. *Steamship Co. v. Rodgers,* 21 S. C., 27. This last holding refers to subdivision 2 of Section 401. We see no valid reason why the same rule should not also apply to subdivision 4 of the same Section, giving the defendant the right to demur to the complaint on the ground that there is a defect of parties, plaintiff or defendant.

If the respondents had taken objection by demurrer or answer that the trustee was a necessary party, we think a motion for nonsuit should have been properly granted. *Huckabee v. Newton,* 23 S. C., 291. *Ayner v. Ritter,* 29 S. C., 135; 7 S. E., 53. *Moyle v. Campbell,* 131 S. C., 166; 127 S. E., 363. We have not been cited to any authority, and we know of none, which holds that the Court may direct a verdict for the defendant on the ground of defect of parties plaintiff.

Having reached the conclusions that the Circuit Judge

erred in directing the verdict for the defendants on the grounds mentioned by him, and being of the opinion that the sustaining grounds of the respondents are insufficient upon which to base such directed verdict, and finding that there was error in the refusal to direct a verdict for the plaintiffs, it is, therefore, the judgment of this Court that the verdict and judgment of the Circuit Court be and the same are hereby reversed; and it is further ordered that this cause be remanded to the Circuit Court and that judgment be entered up therein by the Clerk of that Court in favor of the plaintiffs for the recovery of the possession of the lands described in the complaint in this action, and for the costs of the action, as provided in Rule 27 of this Court.

MESSRS. JUSTICES WATTS, COTHRAN and STABLER concur.

MR. CHIEF JUSTICE GARY did not participate.